CONSIDER PARISH and Others, Respondents, *v.* NEW YORK PRODUCE EXCHANGE and Others, Appellants.

*New York Produce Exchange — a by-law directing a division of a gratuity fund held to be unreasonable and void.*

The New York Produce Exchange, a domestic corporation, originally incorporated under chapter 359 of the Laws of 1862, procured an amendment to its charter (Laws of 1882, chap. 36) authorizing it to "make provision for the widows and families of deceased members," and providing immediately after the clause authorizing the making of by-laws, "Such present members of said corporation as shall agree thereto, and all persons who shall hereafter join said corporation, may be assessed such sum as shall be provided in the by-laws of said corporation, upon the death of any such member agreeing thereto, or who shall hereafter join said corporation; which sum or such proportion thereof as the by-laws may provide, and such proportion of the surplus income of said corporation as the by-laws may provide, may be paid to the widow, children, next of kin of, or other persons dependent upon said deceased member, in such manner as the said by-laws shall prescribe."

The by-laws, adopted in conformity with the amended charter, prescribed that the benefit should be paid, *first,* to the widow, should a member die leaving a widow and no children; *second,* to the widow and children, if there be both; *third,* to the children, if there be children and no widow be left; and, *fourth,* if neither children nor widow be left, then to the next of kin. Subsequently the corporation, acting through a majority of its members, amended its by-laws by providing that "the trustees of the Gratuity Fund shall convert the present accumulated fund into cash, and after paying therefrom all expenses, including those caused by this modification of the gratuity system, shall distribute the same among the subscribing members."

*Held,* that the amended by-law was null and void as against members subscribing to the gratuity system who neither voted for, nor ratified, it,

That the amended by-law operated to effect a change in the charter of the corporation, by devoting the gratuity fund to a purpose inconsistent with that declared by the charter, and also as an abandonment of the franchise granted to the corporation, and was, therefore, unreasonable.

APPEAL by the defendants, the New York Produce Exchange and others, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 28th day of December, 1900, upon the report of a referee declaring void an amendment to the by-laws of the defendant, the New York Produce Exchange, and enjoining the defendants, the trustees of the gratuity fund, from carrying out the provisions of such by-law.

*Abel E. Blackmar*, for the appellants.

*Charles F. Brown*, for the respondents.

O'BRIEN, J.:

This action was brought in behalf of the plaintiffs and all others interested in the so-called "Gratuity Fund" of the New York Produce Exchange in like situation, to have an amendment to by-law 57 of the said New York Produce Exchange declared null and void, and to restrain the exchange and the defendant trustees of the fund from distributing such fund among the members, as provided in and by the said amended by-law. The action affects the rights and interests of nearly 3,000 members of the exchange, which is a domestic corporation originally incorporated by chapter 359 of the Laws of 1862, by the name and style of the New York Commercial Association, for the purposes, as declared in the act, of inculcating just and equitable principles in trade, to establish and maintain uniformity in commercial usages, to acquire, preserve and disseminate valuable business information, and to adjust controversies and misunderstandings between persons engaged in business, and with power to make all proper and needful by-laws, not contrary to the Constitution and laws of the State of New York or of the United States. By chapter 30 of the Laws of 1867, the name of the corporation was changed to New York Produce Exchange.

The plaintiff Woolsey has been a member of the corporation ever since it became a produce exchange, and the plaintiff Consider Parish since 1872. The plaintiff Ellen Parish is the wife of Consider Parish, and as to her the complaint was dismissed, on the ground that she had no present interest in the gratuity fund.

The by-laws of the exchange have at all times contained a pro-

vision that they could not be altered or amended unless the proposed alteration or amendment "has been approved by a vote of two-thirds of the board of managers and ratified by a majority vote of members voting by ballot at an election held for the purpose."

In April, 1881, a resolution was passed by the board of managers requesting the president to appoint a special committee of seven to consider a system of life insurance. The resolution was adopted and a committee duly appointed, and in January, 1883, it reported a proposed amendment to the charter of the corporation and certain by-laws, providing for what is called a "system of gratuity." The report declared that the system will be " applicable to our present membership and in which it will be entirely optional with them to participate; but contemplates an amendment to our charter, making it an integral part of our exchange to which all becoming members thereafter must necessarily subscribe." The proposed amendment to the by-laws consisted of a new section and additions to other sections. These proposed amendments were duly adopted by the board of managers, were thereafter adopted by ballot at a meeting called for the purpose, to take effect after the proposed amendments to the charter should be obtained.

In March, 1882, the proposed amendment to the charter was enacted by the Legislature (Laws of 1882, chap. 36), by which there was added to the enumerated "purposes of corporation" the following: " and to make provision for the widows and families of deceased members ; " and immediately after the clause granting the power to enact by-laws, the following provision was made : " Such present members of said corporation as shall agree thereto, and all persons who shall hereafter join said corporation, may be assessed such sum as shall be provided in the by-laws of said corporation, upon the death of any such member agreeing thereto, or who shall hereafter join said corporation ; which sum or such proportion thereof as the by-laws may provide, and such proportion of the surplus income of said corporation as the by-laws may provide, may be paid to the widow, children, next of kin of, or other persons dependent upon said deceased member, in such manner as the said by-laws shall prescribe," etc.

The by-laws so provisionally adopted and put in force after this amendment of the charter were in conformity to these provisions

of the statute. The new section, which became the 57th, provided that "Every present member of the New York Produce Exchange may, * * * and every future member shall, subscribe to the plan for providing for the families of members, as hereinafter set forth." It prescribed the amount of the assessments; the time of payment; the amount to be paid, based upon the time of death after the adoption of the by-law; to whom it should be paid, and to and for whose benefit; *first* to the widow, should a member die leaving a widow and no children; *second*, to the widow and children, if there be both; *third*, to the children, if children and no widow be left; and, *fourth*, if neither children nor widow be left, then to the next of kin. It created a board of trustees, to be known as "the trustees of the Gratuity Fund" for the management and distribution of the fund and the execution of the provisions of the by-laws, and prescribed the mode of their election and terms of office; and the other amendments to the by-laws were in harmony with and for the purpose of carrying out the provisions relating to the system of gratuity so established.

Between its adoption and January, 1900, this by-law was from time to time amended, if not with the co-operation of the plaintiffs, at least with their acquiescence and ratification. But such amendments have done no more than to regulate the mode of assessments and other details of the management and disposition of the fund and provide for its final application to the purposes for which it was created. In January, 1900, at a meeting duly called and held for such purpose, an amendment to section 57 of the by-laws was adopted by a majority of the members in conformity with the rule prescribed by the by-laws for the adoption of amendments. By this amendment very radical and material changes are made, and it is provided, among other things, that "the trustees of the Gratuity Fund shall convert the present accumulated fund into cash, and after paying therefrom all expenses, including those caused by this modification of the Gratuity System, shall distribute the same among the subscribing members as the class may be constituted on February 1st, 1900, in accordance with their just and equitable rights." It then provides that no portion of the surplus income of the exchange shall thereafter be paid into the gratuity fund, as had theretofore been done, but permits such portion of the surplus as

the board of managers may determine to be used in the purchase and retirement of membership certificates, and that the membership represented by the certificates so purchased and retired shall thereupon terminate, and all interests of the members in whose name such certificates stood, and in the case of death all claims of widow, children and next of kin shall cease.

It is thus apparent that, in addition to an entire change in the basis of assessments, a reduction in the amount of the gratuity and other important changes, this by-law takes the fund already accumulated, amounting to about $750,000 from the widow, children, next of kin and others dependent upon a deceased member, and distributes it to the subscribing members themselves and contemplates the ultimate discontinuance of the gratuity system.

The plaintiffs Consider Parish and Woolsey voted against this amendment, and neither has ratified or acquiesced therein, but both refuse to be bound thereby and bring this action, alleging that the said amendment will deprive the plaintiffs of their vested rights and interests in and to the gratuity fund, and in and to the plan for providing for the families of deceased members ; that such attempted amendment is null and void, and that the defendant New York Produce Exchange and the majority members thereof are without power to adopt the same. It appears that the plaintiff Parish has paid all the assessments made upon his membership and performed all the conditions on his part ; that the assessments so paid by him exceed the sum of $2,500, and that the amount payable to his beneficiaries upon his death is the sum of $9,823.34.

It is contended by the plaintiffs that the rights of the subscribing members in this fund exist by force of a contract made by each with the other members ; that such contract is inviolable and cannot be altered or changed in any material respect, except by and with the consent of all the contracting parties ; that such contract is not subject to alterations or changes in its terms by vote of a majority of the members of the corporation, and that the amendment to the by-laws attempted to be thus made in January, 1900, violates the contract obligations as originally created. The learned referee before whom the case was tried has adopted this view of the case and rendered judgment accordingly.

The position of the defendants, as we understand it, is that the

gratuity system exists in the charter and by-laws of the exchange and not in contract; that the right to alter and amend the by-laws is reserved to the exchange, acting through a majority of its members, in pursuance of the provisions of the by-laws, and that such reserved power is broad enough to authorize the alteration of the system in the substantial and radical manner provided in and by the amendment.

After careful consideration of all the questions presented by the briefs and argument of counsel, and an examination of the authorities cited and relied upon, we have reached the conclusion that this case should be decided and the judgment affirmed upon a theory of the law differing from that adopted by the learned referee. Although concurring in the conclusion reached by him, we prefer not to rest our affirmance of the judgment upon the grounds on which he bases his decision; nor shall we discuss the theory that the rights and liabilities of the subscribers to the gratuity system rest in contract, for all that could be said in support of that theory has been well stated by the learned referee. In the view which we take of the question, if it be conceded that the gratuity system exists solely in the charter and by-laws of the corporation, and that the right to alter and amend the by-laws relating to the system and the fund created under it is reserved to the corporation acting through a majority of the members, it results, both on principle and authority, that this particular amendment of the by-laws is beyond the scope of the corporate power, and is, therefore, illegal and void.

It is implied in the charter of every private corporation that the majority shall have power to make reasonable rules and regulations or by-laws for the government of the company; and the validity of such by-laws depends upon the implied agreement of all the shareholders in forming the corporation; and therefore, any by-law properly enacted by the majority is as binding upon the members of the company as a provision contained in the charter itself. (Morawetz Priv. Corp. [2d ed.] § 491.) It follows that, without the express grant of power to this corporation to alter and amend the by-laws, such power would be implied; and, assuming that the gratuity system is an integral part of the exchange, as declared by the report of the committee, and within its control acting through

its members, it had power and authority to enact by-laws regulating the administration of the system; but such power, whether express or implied, is limited to such laws as are in harmony with the charter of the company, which is its fundamental law. By-laws which are calculated to assist in carrying into effect the purposes of the company are valid; but every by-law which is contrary to the charter, either in its special provisions or its main purposes, is unauthorized and void. (Morawetz Priv. Corp. [2d ed.] § 494.) To hold otherwise would be to permit the majority to effect an alteration of the charter, which cannot be done without the consent of the Legislature and of every member of the corporation. (Morawetz Priv. Corp. [2d ed.] § 395, and cases there cited.) The extent and nature of the power of corporations to make and alter by-laws, and the principles upon which the same rest, are exhaustively considered and discussed in *Kent* v. *Quicksilver Mining Co.* (78 N. Y. 159), and it is there said : " There is a power in this charter to alter, amend, add to or repeal at pleasure, by-laws before made. It is argued from this that it was in the power of the corporate body, in due form and manner, to alter the by-law which had fixed the amount of the capital stock and the number and relative value of the shares thereof. The power to make by-laws is to make such as are not inconsistent with the constitution and the law; and the power to alter has the same limit, so that no alteration could be made which would infringe a right already given and secured by the contract of the corporation. Nor was the power to alter, to the extent of affecting the contracted relative value of a share, reserved when the share was sold to the stockholder, so as to enter into and form a part of the contract. An alteration is a *pro tanto* repeal; but no private corporation can repeal a by-law so as to impair rights which have been given and become vested by virtue of the by-law afterwards repealed. All by-laws must be reasonable and consistent with the general principles of the laws of the land, which are to be determined by the courts, when a case is properly before them. * * * A by-law may regulate or modify the constitution of a corporation, but cannot alter it. (*Rex* v. *Cutbush*, 4 Burr. 2204 ; *R. W. Co.* v. *Allerton*, 18 Wall, 233.) The alteration of a by-law is but the making of another upon the same matter. If the first

must be reasonable and in accord with principles of law, so must that which alters it. If, then, the power is reserved to alter, amend or repeal, and that reservation enters into a contract, the power reserved is to pass reasonable by-laws, agreeable to law. But a by-law that will disturb a vested right is not such: see *Gray* v. *Portland Bank* (3 Mass. 363; Grant on Corps. 91). And it differs not when the power to make and alter by-laws is expressly given to a majority of the stockholders, and that the obnoxious ordinance is passed in due form."

An examination of the case before us in the light of these authorities shows clearly that there was no power in the corporate body, nor in a majority of the members, to enact the by-law in question, for it not only effects a direct change in the charter, but is inconsistent with the purpose for which the gratuity fund was created, and disturbs the vested rights of the members subscribing to the system, and is, therefore, unreasonable and violates the principle upon which the power must rest. The purpose declared by the amendment of the charter of the defendant company and the power granted is special, in no sense embraced in the original purposes of the company at its organization, and as set forth in the statute, is "to make provision for the widows and families of deceased members." For this purpose the power was given it to provide a fund by assessment upon such of the then members of the corporation as should agree thereto, and all persons who should thereafter join the corporation, as hereinbefore set forth, for a special and definite purpose, viz., to be paid the widow, children, next of kin of or other persons dependent upon deceased members, in such manner as the by-laws should prescribe. No other or different purpose is mentioned, and no power is granted the corporation to make other disposition of the sums so raised, nor is such power to be implied. We may concede that the corporation had power, by a majority of its members, to enact by-laws regulating the details of the gratuity system authorized by the statute, and in harmony with the statute, which is its charter; but it had no power by such means to alter its constitution and devote the fund raised under it to a purpose foreign to and inconsistent with the purpose declared by its fundamental law and beyond the scope of the powers conferred, nor to abandon the franchise so granted. If the lawful purposes of a cor-

poration may thus be abandoned and violated, and the vested rights of its members destroyed, no security is to be found for the members of such companies against the exercise of the will of a majority. If they may alter the fundamental law and violate legal principles for one purpose, they may for all, and thus every right of the minority members could be taken away.

The original by-laws enacted by the exchange relative to this fund contained provisions in entire harmony with the charter, as did all the amendments prior to the one in question; but the latter is an attempt to divert the gratuity fund from the legitimate purposes prescribed by law and convert it to the use of the members subscribing to it. It not only takes the fund from the beneficiaries designated by law, viz., the widows, children, next of kin of or others dependent upon the deceased members, and abandons the purpose to make provision for the widows and families of deceased members — the only lawful purpose to which it can be devoted under the charter — but it disturbs the vested rights of the members by unreasonably and inequitably changing the basis for the assessments and the amounts payable to the beneficiaries, and provides a method by which it is evidently expected that eventually the whole system will be done away with and abandoned. This, we have seen, may not be done under the power to enact and alter by-laws either express or implied.

The considerations stated lead to the conclusion that the judgment should be affirmed, with costs.

Van Brunt, P. J., Ingraham and McLaughlin, JJ., concurred.

Judgment affirmed, with costs.