WALTER G. FRENCH, Appellant, *v.* THE NEW YORK MERCANTILE
EXCHANGE, Respondent.

*Merchants' exchange — amendment to the by-laws — participants in an insurance
scheme allowed to become non-participants therein.*

A corporation, organized primarily to provide an exchange for merchants
engaged in a certain business, and, incidentally, to provide for the widows
and families of deceased members, and which has two classes of members,
known as participating and non-participating members, the former class, who
pay an assessment of three dollars upon the death of each member of that
class, being alone interested in the objects of the corporation, so far as relates
to making provision for the widows and families of deceased members, will not
be restrained, at the suit of a participating member, from adopting a by-law
making it optional with its present or future participating members to trans-
fer their membership to the non-participating class, when it appears that the
amendment was adopted because the continued existence of the corporation
was threatened by the resignation of a large number of participating members
who had become dissatisfied with the assessment features of the corporation,
and that all members of the corporation had expressly stipulated in their
application for membership that their rights should be subject to future
amendments of the by-laws.

APPEAL by the plaintiff, Walter G. French, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of New York on the 30th day of Septem-
ber, 1902, upon the decision of the court, rendered after a trial at
the New York Special Term, dismissing the complaint upon the
merits.

*John J. Crawford,* for the appellant.

*George C. De Lacy,* for the respondent.

LAUGHLIN, J.:

This is a suit in equity to have an amendment to one of the
by-laws of the defendant declared null and void and to enjoin the
defendant from taking any action pursuant to the provisions thereof.
The preliminary steps required previous to bringing the amendment
to a vote at a meeting of the stockholders were duly taken and had,
and it was duly adopted by the necessary vote at a meeting of the
stockholders duly convened for that purpose on the 28th day of

December, 1900. The only question presented is whether the corporation had power to enact the amendment.

At the time of the adoption of the amendment the objects of the corporation as prescribed by its charter were twofold: *First*, to provide an exchange for merchants engaged principally in the butter, cheese and egg business, and, *second*, to provide for the widows and families of deceased members. It had two classes of members, known as participating and non-participating members. Both classes of members were interested in the objects of the corporation so far as they related to the objects of the exchange, but the participating members only were interested in the objects of the corporation so far as they related to making provision for the widows and families of deceased. members. The object and effect of the amendment to the by-laws was to permit participating members to withdraw from that class and become non-participating members. There were at this time 212 non-participating members and 281 participating members. The plaintiff is a participating member and he became such in 1882. His contention is that the amendment to the by-law is an interference with his vested rights. The amendment does not purport to interfere with any existing beneficiary fund or to discontinue the beneficiary objects of the corporation. It leaves the provisions of the by-laws so that new members may join either class. It merely makes it optional with the present or future participating members to transfer their membership to the non-participating class. The defendant was originally incorporated under the name of " The Butter and Cheese Exchange of New York" in 1874 by a special act of the Legislature. (Laws of 1874, chap. 86.) Its corporate name was subsequently changed to "The New York Mercantile Exchange" by an order of the Supreme Court. Section 2 .of the charter, as originally enacted, provided that " the objects of said corporation shall be to provide and regulate a suitable room or rooms for an exchange in the city of New York; to foster trade; to protect it against unjust or unlawful exactions; to reform abuses; to diffuse accurate and reliable information ; to settle differences between members and to promote among them good fellowship and a more enlarged and friendly intercourse. The said corporation shall have power to make and adopt a constitution, by-laws, rules and regulations for the admission, government, suspension and expulsion

of its members; the collection of fees and dues; the number and election of its officers, and to define their duties for the safe-keeping of its property and management of its affairs, and from time to time, alter, modify and change such constitution, by-laws, rules and regulations, provided the same be not contrary to the laws of the State of New York or of the United States."

The charter, among other things, authorized the corporation to acquire by lease or purchase a suitable building, library and furniture for its use; to take property by gift, purchase, devise or bequest and to hold, sell, convey, lease or mortgage the same; and provided for an executive committee to manage the affairs of the corporation; for the election of a committee of arbitration, prescribed their power and duties and provided for the submission to and hearing of controversies by them and that a judgment of the Supreme Court might be entered upon their awards. The by-laws provided that members might resign upon paying their obligations, but that they thereby forfeited their property rights in the corporation. These remained the sole objects of the corporation until 1882, when section 2 of the charter was amended by adding another object as follows: "And to make provision for the widows and families of deceased members." (Laws of 1882, chap. 302.) This amendment also provided that the existing members who should agree thereto and all persons thereafter becoming members "may be assessed such sum as shall be provided in the by-laws of said corporation upon the death of any such members agreeing thereto or who shall hereafter join said corporation; which sum, or such proportion thereof as the by-laws may provide, and such proportion of the surplus income of said corporation as the by-laws may provide, may be paid to the widow, children, next of kin of or other persons dependent upon said deceased member, in such manner as the said by-laws shall prescribe. But no such assessment shall be made upon, and no such payment shall affect the proportionate share in the property of said corporation of any present member not consenting thereto." Additional by-laws were then enacted, pursuant to this authority, providing that all existing members consenting thereto and all new members should be subject to an assessment of three dollars upon the death of each member of the participating class, payable to the corporation within thirty days after notice of the death of the

member, and pledging the corporation to pay the same, less five per cent, to the family or next of kin of the deceased member. These were declared gratuity by-laws and they expressly provided that the corporation should only be liable for the sums collected from the members and that they should not be construed "as constituting any estate *in esse* which can be mortgaged or pledged for the payment of any debt, but it shall be construed as the solemn agreement of every subscribing member to make a gift to the family or beneficiaries of each deceased member of the Gratuity Fund * * * and of the Exchange to collect and pay over to such family or beneficiaries said gift." In 1887 the by-laws were amended by providing that members thereafter joining might at their option become either participating or non-participating members. These by-laws were acquiesced in by all members and remained the same until the amendment in question. When there was sufficient in the gratuity fund to pay two assessments, the two succeeding assessments were paid out of the gratuity fund without assessment upon the members. It appears that the gratuity fund was never large enough to pay more than two assessments. The members, whether they belonged to the participating or non-participating class, had equal interests in the property of the corporation. At the time of the adoption of the amendment in question the value of each member's interest in the corporate property was about $500. These interests were represented by certificates and were transferable subject to the transferee being elected a member. A death benefit at this time amounted to $743. It is manifest that the amendment was adopted for the purpose of preserving the corporation. In the second year preceding the adoption of the amendment thirty-four members of the participating class resigned and in the year preceding its adoption sixty-five resigned ; and from the time of the adoption of the amendment to the time of the trial on the 1st day of May, 1902, there was a decrease in the participating class of only twenty-seven members. The action was commenced on the 5th day of February, 1902, and a temporary injunction restraining the operation of the by-law was obtained, but the case does not show when that order was granted. Consequently the full value of this evidence as to the decrease in membership subsequent to the adoption of the amendment does not clearly appear.

The members of either the participating or non-participating class were at all times at liberty to resign and thereby terminate their liability upon paying their obligations to date.   The plaintiff, therefore, has no vested right which will enable him to compel the members of the participating class to remain in the corporation.   The corporation was confronted with the question as to whether its participating members who were dissatisfied with the assessment provisions and unwilling to remain in the corporation on that account, should be compelled to remain in dissatisfied or to resign and forfeit their property rights in the corporation.   If they resigned with this great sacrifice of property, it was not probable that they would join again as non-participating members and, if not, the membership in the corporation would rapidly decrease.   By these resignations preceding the adoption of this amendment the gratuity payable on the death of a member was growing smaller and smaller. It was a question upon which the members might well differ as to whether the participating membership would decrease more rapidly by these resignations or by allowing the participating members to transfer their membership to the non-participating class; but even if it is to be inferred that some members will exercise this option of transferring their membership to the non-participating class who would not have resigned and forfeited their property, that affords no ground for declaring the amendment invalid.   The Legislature did not authorize the participating members to enact by-laws.   That authority was conferred upon the corporation to be exercised by all its members.   It was competent for them to enact this by-law for the good of the corporation, for the preservation of its membership and to insure its continued existence.   We see no vested right of the plaintiff that is invaded by this amendment.   As has been seen, the beneficiary feature of the corporation attached was incidental and secondary and not the primary purpose of its creation.   In the regulation of the corporate affairs for the future by amendments to the by-laws the rights of the corporation which affect its existence are paramount.   As has been shown, this amendment to the by-laws neither diverts nor destroys an existing beneficiary fund and it does not discontinue the beneficiary feature or object of the corporation. The plaintiff and all members in their applications for membership expressly stipulated that their rights were subject to future amend-

ments of the by-laws. This amendment we regard as reasonable and within the powers of the corporation, even if it may result in a material decrease in the amounts of assessments to pay death claims in the future. If this auxiliary feature of the corporation has become unpopular or has outlived its usefulness and this amendment should ultimately render the participating membership of little or no value so far as death claims are concerned, nevertheless such result will be brought about legally and is no different in principle or in its consequences than if the members of the participating fund should all resign or the corporate existence should be terminated. An amendment to the by-laws which would divert or destroy an existing gratuity fund would be invalid, and doubtless it would not be competent by amendment of the by-laws to discontinue the beneficiary feature of the corporation. (*Parish* v. *N. Y. Produce Exchange*, 60 App. Div. 11; affd., 169 N. Y. 34.) The judgment might well be affirmed on the excellent opinion of the learned trial justice, were it not for the fact that he unnecessarily gave expression to some views and found some conclusions of law which appear to be in conflict with the decision in the *Parish Case* (*supra*). The judgment itself merely sustains the validity of this amended by-law, dissolves the injunction and dismisses the complaint upon the merits, with costs; and this is in accord with our views.

It follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, INGRAHAM and HATCH, JJ., concurred.

Judgment affirmed, with costs.