GREEN v. SUPREME COUNCIL OF ROYAL ARCANUM et al.

(Supreme Court, Appellate Division, Second Department. May 19, 1911.)

1. INSURANCE (§ 719*)—FRATERNAL INSURANCE—RIGHT TO MODIFY TERMS.

When a fraternal insurance contract provides for payment of a fixed sum on happening of an event, such as death of the member, and for as-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

sessments at a fixed rate, neither the conditions on which payment is to be made can be altered, nor the amount of insurance reduced, nor the amount of assessment increased, without the member's consent, though the contract reserves in general terms power in the association to change its by-laws; but reasonable changes are proper under specific reservation of power to amend.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

2. INSURANCE (§ 719*)—FRATERNAL INSURANCE—RIGHT TO MODIFY TERMS.

A fraternal beneficial association empowered by statute to amend its rates of assessment can amend its by-laws without an individual member's consent so as to increase the cost of insurance, where the constitution, when he became a member, provided for payment of benefits on compliance with lawful requirements, and where his certificate required him to comply with laws that might be enacted by the Supreme Council governing the benefit fund.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1855; Dec. Dig. § 719.*]

Hirschberg, J., dissenting.

Appeal from Special Term, Kings County.

Action by Samuel Green against the Supreme Council of the Royal Arcanum and others. Judgment for plaintiff (124 N. Y. Supp. 398), and defendants appeal. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

Howard C. Wiggins (Curtis H. Waterman, on the brief), for appellants.

F. J. Moissen, for respondent.

BURR, J. This action involves the validity of an amendment to defendant's by-laws made in 1905. In the case of Mock v. Supreme Council, etc., 121 App. Div. 474, 106 N. Y. Supp. 155, the validity of this amendment was considered by this court and sustained. We are controlled by such decision, unless, as is claimed by plaintiff, subsequent decisions of the Court of Appeals in similar cases are in conflict therewith. The cases so relied upon are Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 134 Am. St. Rep. 838, and Dowdall v. Catholic Mutual Benefit Ass'n, 196 N. Y. 405, 89 N. E. 1075. The Dowdall Case may be dismissed without further consideration as wholly inapplicable to the questions here involved. There was in that case no suggestion of even a general reservation of power to amend by-laws, rules, or requirements.

[1] Whatever the rule may be in other jurisdictions, we think it must now be deemed to be the settled law of this state that when the contract entered into between a member of a fraternal beneficiary organization and such organization provides for the payment of a fixed sum upon the happening of some event, such as the death of the member, and that assessments shall be at a fixed and specified rate, neither the conditions upon which the sum shall become payable can be altered, nor the sum to be paid be reduced, nor the amount of the specified assessment increased, without the consent of such member,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and this rule is not altered by the fact that there may be reserved in such contract a power of amendment of the laws of the association in purely general terms.   Wright v. Knights of Maccabees, supra; Parish v. New York Produce Exchange, 169 N. Y. 34, 61 N. E. 977, 56 L. R. A. 149; Langan v. Supreme Council Am. L. of H., 174 N. Y. 266, 66 N. E. 932; Shipman v. Protected Home Circle, 174 N. Y. 398, 67 N. E. 83, 63 L. R. A. 347; Weber v. Supreme Tent of K. of M., 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753; Ayers v. Order of United Workmen, 188 N. Y. 280, 80 N. E. 1020.

On the other hand, if there is reserved in the contract a power of amendment of the laws governing such association, reasonably designating the subjects thereof, so that a person when he makes application for membership is fairly advised that the terms of the contract in which he is about to enter may be altered in the respects thus referred to subsequent changes in such laws when reasonably made by the proper authorities of the organization are within their power, and must be deemed assented to by him.   Beach v. Supreme Tent, K. of M., 177 N. Y. 100, 69 N. E. 281.   In that case the court said:

"If the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order might from time to time provide, the amendments would be applicable to existing members."

Although the court there used the word "certificate," we think that it was not intended necessarily to limit the effect of a reservation to the words contained in the certificate alone.   In Sabin v. Phinney, 134 N. Y. 423, on page 428, 31 N. E. 1087, on page 1089, 30 Am. St. Rep. 681, the court say:

"The statute under which the corporation was organized, its by-laws, together with the application for, and the certificate of, membership constituted the contract which existed between the member and the society, which instruments construed together measure the rights of these litigants."

In other words, the question is one of construction of the contract, whether such contract is expressed in the statutes under which the corporation is organized, the constitution and laws existing when application for membership was made, the application for membership, the certificate thereof, or one or more of these combined.   The test is, Was the reservation of a power to subsequently alter the terms of the contract so clearly and definitely expressed that the member party to the contract must be deemed to have understood and assented to the same.

[2] With this guiding principle, let us now consider the contract between plaintiff and the defendant organization of which he is a member.   Defendant is a Massachusetts corporation.   The court at Special Term has found as a fact "that by the statutory law or public acts of the commonwealth of Massachusetts fraternal beneficiary organizations, of which the defendant Supreme Council of the Royal Arcanum is one, have power to change and amend their rates of assessment."   The Supreme Court of Massachusetts has so construed these statutes.   Reynolds v. Royal Arcanum, 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154.   Existence of such a power, however, is

insufficient if it is not exercised. But in determining the meaning of the contract entered into by plaintiff when he voluntarily became a member of this Massachusetts corporation, the existence of this statutory authority for change and amendment is one fact to be considered. At the time plaintiff applied for membership in defendant corporation, its constitution specified the objects of the order. Among others was one described as follows:

"(5) To establish a widows' and orphans' benefit fund, from which, on the satisfactory evidence of the death of a member of the order, who has complied with all its lawful requirements, a sum not exceeding three thousand dollars shall be paid to his family or those dependent on him, as he may direct."

The member when making application determined whether he should be classed as a full-rate member, and entitled to receive the sum above specified, or a half-rate member, and entitled to a lesser amount. The amount of the assessments varied accordingly. Defendant's constitution also contained a provision that the constitutions of subordinate councils and the laws of the Supreme Council, "except these relating to the widows' and orphans' benefit fund," may be altered or amended at any regular meeting of the Supreme Council, but that the constitution of the Supreme Council and the laws governing the widows' and orphans' benefit fund should not be altered or amended except by a three-fourths vote of the entire membership of the Supreme Council at a regular meeting, or at a special meeting called for the purpose. Here was a declaration of a purpose to reserve some power of amendment of the laws governing the widows' and orphans' benefit fund under the conditions specified. From the time when plaintiff became a member of defendant organization until the present, the moneys contributed to the widows' and orphans' benefit fund have been used to pay the beneficiaries of deceased members, and for no other purpose whatsoever. Under the constitution and laws of defendant, it could be devoted to no other purpose. This fund was created and maintained by assessments imposed upon defendant's members. At the time that plaintiff joined the organization in 1883, the constitution and laws then provided that every person admitted a member of defendant, and, being at the time of such admission of the age of 37 years (as plaintiff then was), should pay to the collector of his council the sum of $1.81 upon each and every assessment which should or would be made by said Supreme Council while he was a member of the order for the purposes and under the provisions of its constitution and laws, and that each and every member so paying such assessment should not only be entitled to all the benefits recited in the constitution and laws, but the person designated by him as his beneficiary should receive upon his decease a sum not exceeding $3,000. Between 1883 and 1898 the number of assessments necessary to maintain said widows' and orphans' benefit fund varied from 10 to 17 in different years. This method of maintaining the fund proved unsatisfactory, and in 1898 the constitution and laws of defendant were amended, with plaintiff's consent, so that it was provided that each member of the order should pay to the collector of his council, without

notice, 12 regular assessments in each calendar year, and, in addition to said regular assessments, such extra assessments as may from time to time be required and paid as provided in title 6. It was at that time also provided that every applicant upon presenting himself to receive the degree, and every member who has received the degree, should "pay to the collector the following named amounts for the widows' and orphans' benefit fund, according to the age attained at the time of receiving the degree, for full-rate membership; * * * and the same amount of each assessment thereafter, whilst he is a member of the order." Then followed a specification of the amounts to be paid, rated according to age between 21 and 55. The amount to be paid by plaintiff under this provision of defendant's law for each assessment was $3.04. The laws contained a further provision that, whenever in the opinion of the Supreme Regent, Supreme Secretary, and Supreme Treasurer the condition of the supreme treasury shall make it necessary to levy extra assessments for the widows' and orphans' benefit fund to meet any requirement thereof exceeding such twelve regular assessments, they should "make written declarations of such opinion, * * * which shall be filed with the Supreme Secretary, who shall make record of such filing." The Supreme Secretary was then required at once to notify every council to collect immediately the amount of one assessment from every member upon whom the degree was conferred before the date fixed in such notice, and the collector of such council was required immediately to notify each member to pay the extra assessment according to the terms of the notice from the Supreme Secretary. Plaintiff's application for membership contained these words among others:

"Application for Membership in the Royal Arcanum. * * * Having become acquainted with the objects of your order, I hereby make application for full rate membership in your council, and do declare, upon my honor as a man, that the statements by me subscribed herein are each and every one of them true, to the best of my knowledge and belief. * * * I direct that, in case of my decease, all benefit to which I may be entitled from the Royal Arcanum, be paid to Louisa Green related to me as my wife, subject to such future disposal of the benefit, among my dependents, as I may hereafter direct, in compliance with the laws of the order. * * * I agree to make punctual payment of all dues and assessments for which I may become liable, and to conform in all respects to the laws, rules, and usages of the order now in force, or which may hereafter be adopted by the same."

The benefit certificate received by plaintiff, so far as its contents are here material, was in the following form:

"This certificate is issued to Samuel Green, a member of De Witt Clinton Council No. 419, Royal Arcanum, located at Brooklyn, N. Y., upon evidence received from said council that he is a contributor to the widows' and orphans' benefit fund of this order; and upon condition that the statements made by him in his application for membership in the said council * * * be made a part of this contract, and upon condition that the said member complies, in the future, with the laws, rules, and regulations now governing the said council and fund, or that may hereafter be enacted by the Supreme Council to govern said council and fund. These conditions being complied with, the Supreme Council of the Royal Arcanum hereby promises and binds itself to pay out of its widows' and orphans' benefit fund to Louisa Green (wife) a sum not exceeding three thousand dollars, in accordance with and under the provisions of the laws governing said fund, upon satisfactory

evidence of the death of said member, and upon the surrender of this certificate; provided that said member is in good standing in this order at the time of his death."

In 1905 another change was made in the methods of assessment for the maintenance of the widows' and orphans' benefit fund. In consequence of this the monthly assessment rate of plaintiff was changed from $3.16 a month to $6.87 a month, which amount is subject to be still further increased if he shall attain the age of 65 years and still be a member of the order. This change was made after careful deliberation, and the court has found upon abundant evidence that these rates so adopted actually represent the actual cost to the order for the benefits promised to members of each age and equitably apportion among the defendant's members their contributions to the widows' and orphans' benefit fund, taking into consideration age and risk. It is the validity of this last attempted change which is here challenged.

Construing, then, the provision in the certificate requiring plaintiff to comply "with the laws, rules, and regulations * * * that may hereafter be enacted by the Supreme Council to govern said * * * fund" in connection with the provisions of the Massachusetts statute and the constitution and laws of the defendant which were in force when plaintiff became a member of the organization in 1883, as modified with his consent in 1898, can it be said that it was part of the contract between the parties that the payments at that time specified to be made "should be subject to such modification as to amount, terms, and conditions of payment * * * as the endowment laws of the order might from time to time provide?" We think that it was. The certificate expressly reserved the right to make laws, rules, and regulations relating to the widows' and orphans' benefit fund, and plaintiff assented to such reservation. Aside from mere matters of administration, the rules and regulations respecting this fund related to just two things: First, the amount to be paid to the beneficiary out of said fund; and, second, the amount to be contributed to and paid into such fund by the members of the organization in order to make such payments possible. Unless this specific reservation of power to change the laws governing said fund related to possible changes, either in the sums to be paid to the beneficiary or the amount of the assessment necessary to make such payment possible, it is difficult to understand to what it was intended to refer. Supreme Ruler, etc., v. Ericson (Court of Civil Appeals of Texas) 131 S. W. 101. That it must refer to these essential provisions relative to the widows' and orphans' benefit fund seems a necessary conclusion from the fact that there was a specific reservation of power to amend. Mere details of the administration of the affairs of defendant, including details respecting the administration of this fund, could have been changed under a general reservation of power. Ayers v. Ancient Order of United Workmen, etc., 188 N. Y. 280, 80 N. E. 1020; Parish v. N. Y. Produce Exchange, 169 N. Y. 51, 61 N. E. 977, 56 L. R. A. 149. By this specific reservation of power something more must have been intended. In this respect the case at bar differs from, and we think is distinguish-

able from, Wright v. Knights of Maccabees, 196 N. Y. 391, 89 N. E. 1078, 134 Am. St. Rep. 838, relied upon in the court below and hereinbefore referred to.  In that case the application for membership contained these words:

"I hereby agree that * * * the laws of the Supreme Tent of the Knights of the Maccabees of the World, now in force or that hereafter may be adopted, shall form the basis of this contract for beneficial membership: * * * this application and the laws of the Supreme Tent now in force, or that may hereafter be adopted, are made a part of the contract between myself and the Supreme Tent; and I, for myself, and my beneficiary or beneficiaries, agree to conform to and be governed thereby."

The certificate of membership contained these words:

"At his [Wright's] death one assessment on the membership, not exceeding in amount the sum of $1,000, will be paid as a benefit to Mary Wright, * * * provided he shall have in every particular complied with the laws of the order in force or that may hereafter be adopted."

When Wright was admitted to membership, the laws of the association provided that he should pay a monthly assessment of $1.41, and the court found that it was agreed that "he should pay the same rate of assessment thereafter so long as he remains continually in good standing in said order." There was also provision for additional assessments from time to time in case one assessment per month should not be sufficient to pay death and disability claims as they should accrue.  Subsequently the by-laws were amended so as to provide that:

"On and after January 1, 1905, all present life benefit members of the association who are then fifty-five years of age, or over * * * shall pay three dollars per month for each $1,000 of life benefits carried."

The court held that such amended law was inoperative so far as Wright is concerned.  In that case, however, there was only a general as distinguished from a specific consent to future changes in the laws. There was no express reservation of power in the certificate to alter the laws relating to the fund out of which the beneficiary was to be paid, no express provision in the constitution and laws authorizing such change, and no assent in express words in the application for membership to such change.  In this case, as we have indicated, there was.  In this case, when the application is read in connection with the then existing constitution and by-laws, we find express reference to possible subsequent changes in the laws relating to the widow's and orphans' benefit fund, and express provisions as to the methods by which such changes should be effected.  The difference between the cases is the vital one between a mere general reservation of power which cannot affect vested rights, and a specific reservation of power to interfere with and alter the rights arising under the contract at the time that it was made, to which the member party of the contract has assented.  We have examined every case cited by the respondent, which has been decided in this state, and several which were not cited by him. Except the case of Mock v. Supreme Council, supra, we find no case where the provisions of the contract are precisely similar to the case at bar.  A very similar case sustaining the power of amendment was decided by the Supreme Court of Illinois.  Fullenwider v. Supreme

Council Royal League, 180 Ill. 621, 54 N. E. 485, 72 Am. St. Rep. 239, affirming 73 Ill. App. 321. The case of Beach v. Supreme Tent, etc., supra, in some of its features resembles this case. At the time that the plaintiff in that case joined the order there was a provision in the constitution thereof which reserved the right to amend the laws governing the endowment fund, but no reference thereto was made in the certificate, and the court said:

"The contract expressed in the certificate is absolute. * * * We think that the obligation assumed by the defendant in its certificate of membership should not be impaired by provisions of the constitution and laws of the order to which the attention of the member might never be called, or, at least, they should not be cut down under the reservation of the power to amend."

But in the case at bar the contract expressed in the certificate was not absolute, and the attention of the member was called to the provisions of the constitution and laws, and he expressly declares in his application for membership that he has become acquainted with the objects of the order. It may be urged that while it is within the power of defendant not only to increase the number of assessments, but the amount thereof, if necessary to maintain the benefit fund in a condition where it can respond to the demands made upon it, the increased rate should be fixed according to the age of a member at the date when he joined the organization, and that, after a member has for a long period of years paid the assessments due, he should not be called upon as he approaches an advanced period of life to pay a greatly increased sum by way of assessments. But given the power to alter the rate, and the question then becomes only one of reasonableness; and, as we have before pointed out, the court has found in this case upon abundant evidence in favor of the reasonableness of the regulation. The validity of this amended by-law has been sustained in several other jurisdictions. Reynolds v. Royal Arcanum, 192 Mass. 150, 78 N. E. 129, 7 L. R. A. (N. S.) 1154; Gaines v. Supreme Council R. A. (C. C.) 140 Fed. 978; Bartram v. Sup. Council Royal Arcanum, 6 Ontario Weekly Rep. 404. It may be that some of these decisions are based upon reasoning not entirely in harmony with the decisions in this state, but, if the validity of this amendment can be sustained within the principle of decisions within this jurisdiction, it is certainly for the interests of the order, and also of the individual members thereof, that a uniform rule of construction of its contracts should be adopted.

The judgment should be reversed and a new trial granted, costs to abide the final award of costs. Among the so-called findings of fact are some which are possibly more strictly conclusions of law than findings of fact, as for instance the finding that the change made in 1905 was without the consent of plaintiff and without notice to him, and in violation of his rights. In order that the Court of Appeals may be free to review all of the findings and conclusions in this case, whether of fact or law, the order of reversal should recite that it is upon questions of fact as well as of law. All concur except HIRSCHBERG, J., who dissents.