In the Matter of the Application of the PEOPLE OF THE STATE OF NEW YORK, by JESSE S. PHILLIPS, Superintendent of Insurance, for an Order to Take Possession of the Property, and Liquidate the Business of the NATIONAL TEMPERANCE LIFE INSURANCE SOCIETY.

AMERICAN LIFE SOCIETY OF NEW YORK, Appellant; HORACE S. WARNER, M. D., Respondent.

Second Department, June 9, 1922.

Insurance — life insurance — mutual benefit association — assets turned over to another association under contract to pay benefits — mortuary fund impaired — claim for medical services presented in liquidation proceedings not payable out of depleted mortuary fund — association receiving assets not required to pay claim.

The mortuary fund of a mutual benefit life insurance society had become impaired and thereafter the society transferred all its assets to another association under a contract providing for the continuation of the life insurance benefits of the certificates, and that the association receiving the assets would pay the net contributions of members from assets received, who did not accept the contract. The society was subsequently dissolved and the Superintendent of Insurance took possession of the property to liquidate the business. The funds of the society were never separated but all moneys were put into a common fund out of which both death benefits and expenses of management were paid. Held, that under section 233, subdivision 4, of the Insurance Law and under the certificates issued to members, a claim presented by a doctor for medical services in examining applicants could not be paid out of the impaired mortuary

fund, and that the association which had received all the assets of the defunct association was not bound to pay said claim for to do so would constitute a diversion of the funds from the purpose for which they were collected.

APPEAL by the American Life Society of New York from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Kings on the 25th day of January, 1922, resettling a former order of the court dated the 8th day of March, 1921.

*Miles M. Dawson*, for the appellant.

*John B. Warner*, for the respondent.

JAYCOX, J.:

The National Temperance Life Insurance Society is a fraternal benefit society, organized and authorized to do business under article 7 of the Insurance Law of the State of New York. It commenced business on September 11, 1914. The society was examined by the Insurance Department as of December 31, 1917. It was found that the insurance reserves of the society had been impaired by using the benefit funds for expenses. This shortage was made good by the officers and directors. On December 31, 1919, the National Temperance Life Insurance Society, pursuant to a contract providing for the continuation of the life insurance benefits of the certificates, turned over to the American Life Society all its assets. The contract provided that the American Life Society would pay the net contributions of members from the assets received, who did not accept the contract. The contract was approved by the Superintendent of Insurance on January 23, 1921. An order was duly made dissolving the National Temperance Life Insurance Society and directing the Superintendent of Insurance to forthwith take possession of the property and liquidate the business of said insurance society pursuant to the provisions of section 63 of the Insurance Law of this State. (See Insurance Law, § 63, added by Laws of 1909, chap. 300, as amd. by Laws of 1912, chap. 217; Laws of 1913, chap. 29, and Laws of 1918, chap. 119.) A liquidator was appointed who immediately took possession of the company. He published the necessary notices for the presentation of claims. No assets of the National Temperance Life Insurance Society came into the hands of the liquidator. All the assets of that company were taken by the American Life Society under and pursuant to its contract with the National Temperance Life Insurance Society. The total assets thus transferred amounted to $12,415.64. The expenses of the liquidation have been paid by the American Life Society.

The only claim presented to the liquidator, except those of the

non-consenting policyholders, is the claim in controversy here. This claim was presented by Horace S. Warner, M. D., for $234.50, balance of fees for examining 764 applicants for life insurance. It is claimed that all of the assets of the National Temperance Life Insurance Society turned over to the American Life Society were a part of what is known as the " mortuary fund " and that said fund was already impaired by paying the expenses of the company therefrom; that on the 31st day of December, 1919, said mortuary fund was impaired to at least the amount of $15,000. The report of the examiner further says: " The funds of the Society have never been separated but all monies have been thrown into a common fund out of which all claims have been paid regardless of whether they were death benefits or bills covering expenses of management." The reserve on the outstanding certificates should be $24,008.64, in accordance with the computation made by the consulting actuary. The Insurance Law (Art. 7, § 233, subd. 4, as added by Laws of 1911, chap. 198) provides: " Every provision of the laws of a society for payment by its members, in whatever form made, shall distinctly state the purpose of the same and the proportion thereof which may be used for expenses, and no part of the money collected for mortuary or disability purposes, or the net accretions of either or any of said funds, shall be used for expenses." The terms and conditions of the certificates issued to members required a division of the funds of the society in accordance with the law above quoted, and, as stated above, all of the moneys applicable to the payment of expenses had been used up and also approximately $15,000 of the funds which had been collected for mortuary purposes.

The claim of Dr. Warner was duly presented to the liquidator of the National Temperance Life Insurance Society, who reported that " one claim other than the claims of members for their distributive shares of assets has been filed with me. This is the claim of Horace S. Warner, M. D., for $234.50, fees for examining 764 applicants for insurance. The American Life Society having taken all the assets of the National Temperance Life Insurance Society, and having made no provision for the payment of any claims other than death claims arising on benefit certificates issued by the National Temperance Life Insurance Society, is liable for this claim and any other valid and unpaid debts of the National Temperance Life Insurance Society."

A motion was made to confirm this report. This resulted in an order which confirmed the report and directed the American Life Society to pay to the Superintendent of Insurance the amount due to the non-consenting certificate holders, but made no direction

for the payment of the claim of Dr. Warner. Thereafter, upon due notice, the order was so resettled as to direct that the claim of Horace S. Warner, M. D., for $234.50 be paid by the American Life Society to said Horace S. Warner. It is from this direction that the American Life Society appeals. Its contention is that under subdivision 4 of section 233 of the Insurance Law, quoted above, all the assets of the National Temperance Life Insurance Society constituted a part of its mortuary fund and under that law and under the certificates issued to the members no part of the mortuary fund could be used to pay expenses. No case has been cited by either side directly in point.

The appellant claims that these funds constituted a trust fund in the hands of the society, which could not be diverted to any purpose other than that for which it was created.

In Corpus Juris (Vol. 7, p. 1086) it is said: " Application of Funds. The application of the funds of a beneficial society is controlled by its charter of incorporation or its articles of association and its constitution and by-laws, as well as by statute, and the association, its subordinate branches, or the members thereof, have no power to divert the funds from the purposes to which, under the laws of the order, they have been dedicated." (See, also, Nibl. Ben. Soc. & Acc. Ins. 247; *Matter of Protection Life Insurance Company,* 9 Biss. [C. C.] 188, 198.)

In *Parish* v. *New York Produce Exchange* (169 N. Y. 34) the question involved was the power of the trustees of the New York Produce Exchange Gratuity Fund to divert the fund from the purpose for which it was raised. Organized under a special statute, the system was similar to mutual benefit life insurance, and after a fund had been accumulated it was attempted, by means of an amendment to the by-laws, to distribute the accumulated fund among the subscribing members " as the class might be constituted on February 1, 1900." The Court of Appeals, speaking by Chief Judge PARKER, said (p. 52): " The by-laws provided the working plans for this scheme, while the contract of the subscribing members with the association was made under the charter and these by-laws which expressed no other or different disposition for the fund to be accumulated in the manner provided therein than that it should be paid to the ' widow, children, next of kin of, or other persons dependent upon said deceased member.' For that purpose it was paid over to the trustees of the gratuity fund, and with that object in view they accepted it, and every dollar thus contributed and paid over for that purpose was impressed with that trust, and the trustees held it thus impressed." It was held that the amended by-law which attempted to divert this fund was illegal and void.

The Court of Appeals in *Matter of Equitable Reserve Fund Life Association* (131 N. Y. 354) held that a special fund created as a reserve for the benefit of a certain class of policyholders could not be diverted to other purposes.

The respondent herein relies almost entirely upon *National Park Bank* v. *Clark* (92 App. Div. 262). The question involved in that case was as to the rights of an attachment creditor and the receiver of the corporation. The Supreme Council of the Order of Chosen Friends Relief Fund had on deposit in the National Park Bank of New York $7,067.32. The appellant Lizzie G. Brown was the beneficiary in a policy of insurance upon the life of her mother, Mary C. Vandervoort. Upon the death of Mrs. Vandervoort, the appellant's claim was allowed for the full amount of the policy, $2,000, and $200 was paid on account thereof. The balance of $1,800 not having been paid and the fraternal insurance order above named being a foreign corporation, an attachment against the fund in the National Park Bank was obtained. At about the same time a receiver was appointed. The court at Special Term decided against the attaching creditor and held that the receiver was entitled to the fund. An appeal was taken to the Appellate Division and that court held that the attaching creditor had first claim upon this fund. No question was there involved as to the dedication of the fund to any special purpose. The fund in the National Park Bank was used for the payment of death claims generally, and the attaching creditor's claim was a death claim. Therefore, if the receiver's right to the fund did not mature before the attachment was served, the attaching creditor was entitled to the fund. This was the only question involved. The court, however, in discussing the question involved, used expressions which the respondent claims indicate that his claim should be paid out of this fund, no matter what the purpose for which it was collected. This, however, I think is clearly shown to be erroneous by this portion of the opinion of Mr. Justice HATCH, who gave expression to the court's view (p. 269): " The appointment of the receiver preserved the fund for those entitled thereto, and it may be that in the equitable distribution of the assets of the corporation which come to the hands of the receivers particular creditors will be entitled to payment from particular funds held by the corporation, and that those entitled to share in the relief fund may be entitled to preference therein superior to the rights of general creditors of the corporation; but such fact does not divest the lien of an attachment which has been regularly levied upon the property of the corporation prior to the appointment of the receiver within the jurisdiction where the attachment is levied."

I recommend that the order appealed from, in so far as the same directs the American Life Society to pay the claim of Dr. Horace S. Warner, be reversed on the law, with ten dollars costs and disbursements, and that the motion to resettle the prior order in that respect be denied, with ten dollars costs.

BLACKMAR, P. J., RICH, KELLY and YOUNG, JJ., concur.

Order in so far as the same directs the American Life Society to pay the claim of Dr. Horace S. Warner reversed on the law, with ten dollars costs and disbursements, and motion to resettle the prior order in that respect denied, with ten dollars costs.