(94 App. Div. 357.)

SMITH v. SUPREME COUNCIL A. L. H.

(Supreme Court, Appellate Division, First Department.   May 13, 1904.)

1. MUTUAL BENEFIT INSURANCE—BY-LAWS—CHANGE—VESTED RIGHTS.
      Under the power reserved to a fraternal beneficiary society to amend its
   laws, it has no authority, without the consent of the holder of a certifi-
   cate, to reduce the amount stipulated to be paid.

2. SAME—ACQUIESCENCE OF MEMBER—PROOF.
      Where a fraternal beneficiary society sought to amend its laws by pro-
   viding that thereafter $2,000 should be the highest amount paid on any
   benefit certificate theretofore or thereafter issued by it, a member's rati-
   fication of and acquiescence in reducing his certificate from $5,000 is not
   shown by the fact that he paid, after the alleged amendment, at the rate
   of $13.80 on each assessment levied on him, in place of $34.50, which had
   theretofore been the amount of his assessment, in the absence of proof of
   knowledge on the part of the member that the reduction in the assess-
   ment was solely occasioned by the reduction in the indemnity provided
   by the certificate.

Appeal from Special Term, New York County.

Action by Harriet A. Smith against the Supreme Council American
Legion of Honor.   From a judgment for plaintiff, defendant appeals.
Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN,
O'BRIEN, and INGRAHAM, JJ.

Henry A. Powell, for appellant.
Daniel Daly, for respondent.

HATCH, J.   The plaintiff by this action seeks to recover the sum of
$5,000, the amount of a benefit certificate issued by the defendant to
Charles Smith, the husband of the plaintiff, as a member of the defend-
ant corporation, a mutual benefit insurance society.   By the terms of
the certificate defendant agreed to pay to the plaintiff $5,000 upon sat-
isfactory proof of the death of the insured while a member of the de-
fendant in good standing.   It was shown upon the trial that the certifi-
cate was issued to the insured February 14, 1889, and that he remained
in good standing until his death, which occurred on the 15th day of
November, 1902, a period of 13 years and 9 months, during which time
he paid all assessments and dues that were levied or demanded.   The
defendant admitted these facts, but averred, as a defense to a recovery
upon the certificate, that its members were subject to the rules and reg-
ulations set forth in the constitution and by-laws, as was provided in
the benefit certificate issued to the insured.   That after the issuance of
the certificate the defendant changed its laws by an amendment which
went into effect October 1, 1900, whereby it was provided that thereafter
$2,000 should be the highest amount paid upon any benefit certificate
theretofore or thereafter issued, and that it admitted liability to the
amount of $2,000, and averred a tender of that sum in discharge of the
liability under its certificate.   That after the 1st day of October, 1900,
and continuously down to the date of the death of the insured, all
assessments which were levied upon the insured by the defendant were

¶ 1. See Insurance, vol. 28, Cent. Dig. § 1855.

levied upon the basis of the modified contract or plan of a benefit cer-
tificate of the value of $2,000 only. It did not appear, however, that any
new benefit certificate for that amount was ever accepted by the deceas-
ed, or that it was ever issued to him by the defendant, although it ap-
peared that the insured after the claimed amendment of the constitu-
tion paid at the rate of $13,80 upon each assessment levied upon him, in
place of $34.50, which had theretofore been the amount of his assess-
ment, and that the amount of such difference which the insured would
have been required to pay over the sum which he did pay was $807.30.
The court found, among other things, that the plaintiff was entitled to
recover upon the certificate as originally issued, but that there should
be deducted therefrom the difference in the amount of the assessments
which the insured paid from October 1, 1900, to his death, as figured
upon a basis of $2,000 benefit instead of a certificate for $5,000, and
further found that this difference amounted to $807.30. From the judg-
ment entered thereon this appeal is taken.

We think the learned court was correct in the conclusion which it
reached. It is settled by indubitable authority that the reserved right
to amend the laws which constituted a part of the contract between the
insured and the defendant does not confer authority to destroy vested
rights, and without the consent of the holder of the certificate to such
change it is inoperative and void. This was so held in respect to the
amendment now under consideration (Langan v. Supreme Council
American Legion of Honor, 174 N. Y. 266, 66 N. E. 932; Williams
v. Supreme Council, 80 App. Div. 402, 80 N. Y. Supp. 713), and also
as applied to other similar contracts sought in like manner to be so chan-
ged (Parish v. N. Y. Produce Exchange, 169 N. Y. 34, 61 N. E. 977, 56
L. R. A. 149; Weber v. Supreme Tent K. of M., 172 N. Y. 490, 65 N. E.
258, 92 Am. St. Rep. 753).

It is said, however, that the insured, by paying the reduced assessment
from October 1, 1900, to the day of his death on the 15th day of No-
vember, 1902, has by such act acquiesced in the change in the law and
the reduction of the certificate to the sum of $2,000, and that the ben-
eficiary is now estopped from asserting any right for a larger amount.
A person cannot be deemed to have acquiesced in and ratified a trans-
action unless he has knowledge of the action to which the acquiescence
and ratification applies. This rule is elementary, as a person cannot
be said to acquiesce in and ratify that of which he has no knowledge.
The court found that neither the insured nor the plaintiff consented to
the reduction in amount of the benefit certificate, and did not ratify
such modification, and that no notice of the change in the law was given
to either of them. This finding has support in the testimony. The evi-
dence given upon the subject came from the defendant's secretary,
wherein he states that notices of the passage of the amendment were
sent to the members, as well as were the amendments to the by-laws.
Being interrogated by the court, however, the witness testified that the
notice given was "by an official circular, also by a newspaper which was
published in the interest of the order"; and, further, the witness stated
that the supreme council did not communicate directly with the mem-
bers, except in the official notice changing the by-laws; that the latter
were sent to the local council and every member in the order; but when

and how these notices were sent the record does not disclose, and there is no evidence that they were brought to the knowledge of or ever reached the insured or the beneficiary named in the certificate, and there is no proof showing how notices of change in the by-laws were to be given, or, if there was such provision, compliance was not shown to have been had with it. If the insured had no notice of the change in the law, and had no knowledge upon the subject, his contract rights could not be arbitrarily changed and divested upon the theory of acquiescence, ratification, or estoppel. Estoppel in pais may be predicated upon silence and acquiescence where the party has knowledge of the facts, and where the person acting upon such acquiescence would be misled to its prejudice or defrauded of some right. Am. & Eng. Ency. of Law (2d Ed.) p. 422. The defendant herein is conclusively presumed to have knowledge that its act in attempting to destroy the vested rights of the insured was unlawful and void; consequently it could not be misled or damaged in any sense because it is defeated in its attempt to violate its contract and deprive the insured and the plaintiff of its benefits. Under such circumstances it could not be misled to its prejudice. There is not a single element of equity in such a claim, and nothing, therefore, upon which an equitable estoppel could be based. Nor did the payment of the reduced amount indicate acquiescence of the insured in this destruction of his vested rights. It appears from the record that when he became a member of the defendant the amount of his assessment was $11.50. How it was changed so that it became $34.50 we are not informed by any proof contained in this record. If it be assumed that such increase in assessment was based upon the advancing age of the insured, it by no means follows that the defendant could not by change in the method of its business reduce the assessment in amount. By the scheme of its organization it was to realize from one assessment a sum sufficient to pay the amount of a death claim, and to realize this sum would depend upon many things, as the amount of the fund on hand to pay the death claims, the number of deaths, extent of the membership, the amount which an assessment produced, and a variety of other things which might modify or change the amount necessary to be levied in order to produce the fund. The court cannot take judicial notice that in the management of its business a change in the amount of the assessment could not be made either by increasing or diminishing, and there is nothing to show that the insured was not justified in thinking that the amount of the assessment imposed was the sum deemed necessary to meet the payment of death claims, or that it was less than the proportionate amount which the defendant had determined to be necessary in order to furnish the defendant with funds to meet its obligations. If it were otherwise the defendant was required to make proof of the fact, and to show some knowledge upon the part of the insured that the reduction in the assessment was solely occasioned by the reduction in the indemnity provided by the certificate. The mere fact, therefore, of paying the reduced assessment cannot operate as ground upon which to base acquiescence and ratification, or upon which an estoppel may be predicated. In Simons v. Supreme Council, 82 App. Div. 617, 81 N. Y. Supp. 1014, the court decided that the mere payment of a reduced amount did not suffice to destroy the vested right held by the in-

sured. That case considered the effect of the defendant's amended law which is here relied upon. It differs in no respect from the case we are now considering, save in the fact that the insured protested against the reduction, and tendered the amount of the assessment which he had theretofore been paying, which was refused, and he then continued to pay under protest such reduced assessment. We are of opinion that this fact does not change the rule to be applied. The judgment of the court in that case proceeded upon the ground that the insured was right in paying the reduced amount in order to lessen the damages which the defendant would sustain by reason of its breach of contract. The fact of protest and tender has no effect upon such rule, nor did it change the existing status of the parties. The protest and tender only rebutted the inference of acquiescence and ratification. It was the payment which kept alive under the defendant's claim the certificate as reduced. So here the payment kept alive this certificate under the defendant's claim, and thereby reduced the damages which the defendant had incurred by reason of its breach. So the payment here, as in that case, inured to the benefit of the defendant by reducing the damages for which it had made itself liable by reason of the breach. In principle, therefore, that decision is controlling, and is decisive of this case.

We should not deem this discussion necessary were it not for a decision of the Third Department in Evans v. Southern Tier Masonic R. Association, 76 App. Div. 151, 78 N. Y. Supp. 611, decided by a divided court. Therein it was held, upon a state of facts quite similar to the present, that the payment of the reduced assessment was notice to the insured of a change in the by-laws, and that by such payment he acquiesced therein. There, as here, such change operated to destroy vested rights. The decision proceeded upon the ground that the insured was presumed conclusively to have knowledge of the by-laws of the association, and, consequently, of this amendment, at the time when he was making the payment, and that, aside from this presumption, the change in the method of assessment was actual notice to him of the change in the by-laws. We hesitate in disagreeing with the learned court who made this decision, but, with all deference thereto, we are of opinion that it is in conflict with the law as announced in the Second Department in Simons v. Supreme Council, supra, and with the law of the case. Nor do we think the authorities cited by the learned court in support of its conclusion decide the question as therein announced. For the first proposition, the court relies upon Bacon on Benefit Societies Life Insurance, § 81, wherein it is stated as a general proposition that the by-laws of a society are binding upon all the members, and all are conclusively presumed to know them; but it is evident from a reading of the entire section, to which reference is made, that it has regard to laws and by-laws existing at the time when the insured becomes a member. By the provisions of sections 79 and 80, which discuss the authority to make and change laws, it is shown that the laws, to be binding upon all members, must be properly adopted, and must be such laws as the corporation has the power to make. Therein it is said:

"If the charter, or the fundamental agreement of the members, prescribe the mode in which the by-laws shall be made and adopted in order to insure their validity, that mode must be strictly pursued."

And, further:

"No by-laws can be repealed so as to impair or affect vested rights, for the members have the right to rely upon the by-laws, which, as between themselves, are contracts. A by-law that will destroy a vested right is unreasonable."

The cases cited fully support the text. There can be no presumption that a member has notice of a law which is invalid and which destroys his vested property rights. The member is only presumed to know of the existence of such laws and rules as the corporation has authority to make. Indeed, the presumption is that the corporation will not pass a law which is illegal, unreasonable, and void; otherwise, by a presumption, a member would be bound by an illegal act which destroyed his property right. It is evident that such a rule of law does not exist, and may not be invoked as a protection for an illegal act constituting a breach of contract and which works a destruction of vested rights. Nor do the cases cited support the doctrine of acquiescence. In Koeth v. The Knights Templars' & Masons' Life Indemnity Company, 37 App. Div. 146, 55 N. Y. Supp. 768, the sole question involved was whether it was competent for the defendant, when sued upon its indemnity certificate, to show that an amendment was adopted to its laws without opposition, and that the certificate holder, as a member of the organization, voted in favor of such amendment. This proof having been excluded on the plaintiff's objection, who was seeking to enforce the certificate held by the person who had voted in favor of the amendment, the court held such ruling to be error, sustained the defendant's exceptions, and ordered a new trial. The court, speaking through Judge Follett, said:

"It was competent for the defendant to show that the insured expressly assented, January 14, 1896, to a change of the contract, existing between him and the defendant, as to the manner of giving notices of assessments and when such assessments became payable."

Therein also the question presented was not only to show the affirmative act and the express assent of the certificate holder to the change in the laws, but the law itself was such a one as the society was authorized to change. In MacDowell v. Ackley, 93 Pa. 277, the amendment to the law was made by all the members of the association, and provided that a suspended member who should fail for three months to pay in full all credits, dues, and assessments should forthwith cease to be a full member for the purposes of the association; that he might thereafter be restored to full membership by favorable report of the standing committee, and by paying in full all arrears of gratuities, dues and assessments. The court held that the members of the association had the power to make such a change in the laws, and that they were binding upon the members. The sole point in the case was whether the failure of the member "to pay his dues and assessments, and his second suspension, worked a forfeiture of his contingent rights." Therein it appeared that the member had the right to participate in the change in the constitution, and the subject-matter of it constituted a regulation having regard to a compliance by the member with the terms of his contract. The court held that, as the member had failed to comply with the terms

of his contract, his beneficiary ceased to have any interest in the fund upon his death. Two things, therefore, concurred: One that the amendment to the constitution was by the body itself, had relation to a subject over which it had the power to legislate, and in legislating it interfered with no vested rights of a member, but provided alone for the effect which followed neglect upon the part of a member to comply with the terms of his contract. In Bogards v. Farmers' Mutual Insurance Co., 79 Mich. 440, 44 N. W. 856, the plaintiff was the holder of a policy of insurance issued by the defendant, which was organized under an act authorizing the incorporation of mutual fire insurance companies. Policies were issued to the members, and membership was maintained by the payment of certain fees and 1 mill per cent. on the amount insured at the time of issuing the policy, with the assessments made therefor. In the charter of the company power was expressly conferred upon the members to pass by-laws, at any annual or special meeting, which should be binding alike upon the corporation and the directors. The policy was issued and received under an express agreement to be subject to all changes which should thereafter be made by the charter and by-laws, and the charter provided that at the annual meeting members present might determine, among other things, a limitation of single hazard. At a regular meeting the company adopted a by-law that it should not be liable for loss by fire from steam power used on or about the premises of any member of the company, and a copy of this by-law was given immediately to the plaintiff. It was held that a loss suffered by reason of the exception contained in this by-law created no liability against the company. This case was clearly well decided, for the chartered power in express terms gave the right to make the limitation; the plaintiff had the right to participate in its action; it related to a subject which was clearly within the power of the corporation to regulate; notice was given, and consequently compliance was had with the terms of the contract which had been made; and there was no interference with vested rights. The court took occasion to distinguish that decision from Becker v. Farmers' Mutual Insurance Co., 48 Mich. 610, 12 N. W. 874, where, there being no such reserved power and no authority to make such a change, the attempted modification was held to be a destruction of vested rights.

These are all of the cases relied upon by the learned court in announcing the doctrine, save one which seems to be not reported. These cases simply serve to show the distinction which exists between an authorized and an unauthorized change in the laws governing such contracts, and, as we read them, instead of supporting the doctrine of acquiescence and estoppel, they confirm the views which we have heretofore expressed. See, also, Morawetz on Corporations (2d Ed.) §§ 500–508.

If these views are sound, it follows that the judgment should be affirmed, with costs. All concur.