(96 App. Div. 491.)

FARGO v. SUPREME TENT OF THE KNIGHTS OF THE MACCABEES OF
THE WORLD.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1904.)

1. MUTUAL BENEFIT INSURANCE—BY-LAWS—CHANGE—EFFECT ON EXISTING POLICIES.

When deceased was insured by a mutual benefit association, its by-laws provided that no benefits should be paid when death was the result of suicide within one year after admission. Such provision was amended so as to provide that no benefits should be paid when death was the result of suicide, whether deceased was sane or insane, within five years after admission, except that in such case all assessments should be repaid. Thereafter deceased's certificates were canceled, and new certificates issued in the same amount, after which the by-laws were again amended so as to provide that no benefits should be paid when death resulted from suicide whether the member was sane or insane, but that in such case twice the amount of all assessments paid should be repaid to the beneficiary. Deceased died as the result of suicide, while insane, after having been a member for more than five years. Held, that such association had no power, as against deceased, to pass the last amendment, striking out all time limit as to suicide and that decedent's beneficiary was therefore entitled to recover the face value of the certificates.

2. SAME—WAIVER.

Where an amendment of a by-law of a mutual benefit society relating to suicide was unreasonable in so far as it affected existing members, the fact that a representative from the local lodge of one of such members was in attendance at the meeting of the superior lodge when the amendment was made did not constitute a consent to such amendment on the part of such member.

Submitted controversy between Anna J. Fargo against the Supreme Tent of the Knights of the Maccabees of the World. Judgment for plaintiff.

Argued before McLENNAN, P. J., and WILLIAMS, HISCOCK, and STOVER, JJ.

Woodworth & Greff, for plaintiff.

Love & Quackenbush and Franklin Kennedy, for defendant.

WILLIAMS, J.   Judgment should be ordered in favor of the plaintiff for $2,000, with interest from December 8, 1903, and costs.

The question to be determined is whether the plaintiff is entitled to recover the full amount specified in the certificate, $2,000 and interest, or double the amount paid into the life benefit fund during the membership of deceased, $307.20, and interest.   The defendant is a mutual benefit fraternity, organized under the laws of Michigan, and doing business in the state of New York pursuant to article 7 of the insurance law (Laws 1892, p. 1933, c. 690).   The deceased became an endowment member of defendant September 13, 1894, for an amount not to exceed $1,000, and a certificate was issued, naming the plaintiff, who was his wife, as beneficiary.   The deceased also became an endowment member of the Great Camp, Knights of the Maccabees for New York, a subordinate body of the defendant, on the same day, for an amount not to exceed $1,000, and a certificate was issued naming the plaintiff as beneficiary.   In the month of July, 1898, the latter or—

89 N.Y.S.—5

ganization resolved to transfer its endowment certificates to the defendant, which agreed to assume all liability therefor in conformity with and pursuant to its laws then in force. Pursuant to such resolution the endowment certificates in question were transferred to the defendant, which, at the request of the deceased, on September 1, 1898, canceled such certificates, and issued in place thereof a new certificate for an amount not exceeding $2,000, naming the plaintiff as beneficiary. The deceased died October 9, 1903, as a result of suicide, while insane. All assessments were paid during the lifetime of the deceased, and he was a member in good standing until the time of his death, and the certificate of September 1, 1898, was valid and in force when he died. When the two original certificates were issued in 1894 the by-laws of the defendant and its subordinate provided (section 173) that no benefit should be paid when death was the result of suicide, within one year after admission, whether the member so taking his own life was sane or insane at the time. In 1897 section 173 of the by-laws was amended so as to provide that no benefit should be paid when death was the result of suicide within five years after admission, whether the member so taking his own life was sane or insane at the time; provided that in case of such suicide all assessments paid in should be repaid to the beneficiary, and such amount should be the full amount that could be claimed. In 1901 section 173 of the by-laws was redesignated as section 432, and amended so as to provide that no benefits should be paid when death was the result of suicide, whether the member taking his own life was sane or insane at the time; provided that in case of such suicide twice the amount of all assessments paid in should be repaid to the beneficiary, which amount should not exceed the face of the certificate, and should be the full amount that could be claimed. The defendant claims this by-law—section 432—is binding upon the plaintiff, and that she can claim under it only $307.20; while the plaintiff claims it is not binding upon her; that she is only bound by the original by-law, section 173, in force in 1894, when the original certificates were issued, or at least that section as amended in 1897; and, the suicide not having occurred within one or five years, she is entitled to the full amount of the certificate, $2,000. The only question, therefore, is whether the defendant had power to make the amendment of 1901, striking out all time limit as to suicide, so as to be binding upon the deceased and his beneficiary, the plaintiff.

The law of this state is well settled that the defendant had no power to make such an amendment so as to bind persons already insured and their beneficiaries. Parish v. N. Y. Produce Ex., 169 N. Y. 34, 61 N. E. 977, 56 L. R. A. 149; Weber v. S. T. of K. of M. of W., 172 N. Y. 490, 65 N. E. 258, 92 Am. St. Rep. 753; Langan v. S. C. A. L. of H., 174 N. Y. 266, 66 N. E. 932; Beach v. S. T. of K. of M. of W., 177 N. Y. 100, 69 N. E. 281. The Webber Case alone need be specially referred to. It was there held that the amendment by this defendant, hereinbefore referred to as made in 1897, changing the time limit as to suicide from one to five years, was ineffectual to bar a recovery upon a certificate issued before such amendment was made, when the suicide occurred more than one but less than five

years after the issue of the certificate.   We quote from the opinion in that case, viz.:

"Unintentional self-destruction, whether due to insanity or accident, after the lapse of a year from the making of the contract, was as much insured against as death from typhoid fever or consumption, and an amendment to its by-laws providing that the death of an existing member from any of these causes should render the policy void would deprive the party of vested contract rights.  An amendment which effects such a result, we have recently held, may not be made, because it is an unreasonable amendment destroying contract rights, instead of regulating the administration of the corporation and its membership within reasonable bounds"—citing the Parish Case, above.

If such an amendment could not be made, certainly one striking out all time limit could not be.   That case is decisive as to the rights of the parties in this case.

We think there is no merit in the claim that the deceased consented to the amendment of 1901.   He very likely did consent to the amendment of 1897 by surrendering his original certificates and taking a new one in place thereof in 1898 after that amendment had been made, but there is no more reason in this case than in the Webber Case for saying he consented to the amendment of 1901.   It is true that in the Webber Case there was no finding that the deceased was sane when the amendment was made.   There is such a finding as to deceased in this case.   There was no finding in the Webber Case that deceased was insane at the time the amendment was made, and in the absence of such a finding the court must have assumed he was sane.   Nor can it be said that he consented to the amendment because the representatives from his tent were in attendance when the amendment was made.   The amendment being an unreasonable one as to the deceased, he could not have anticipated it would be made so as to affect his rights, and could not be held to have authorized the representatives of his tent to assent to the same.

The views herein expressed lead to the direction of judgment for the plaintiff for $2,000, with interest and costs.   All concur.