MARTHA EVANS, as Administratrix of the Estate of ELIZA J. EVANS, Deceased, Appellant and Respondent, *v*. SOUTHERN TIER MASONIC RELIEF ASSOCIATION, Respondent and Appellant.

1. MUTUAL BENEFIT ASSOCIATION — WHEN BENEFICIARY NAMED IN CERTIFICATE CANNOT BE DEPRIVED OF BENEFITS BY SUBSEQUENT AMENDMENTS TO BY-LAWS.  The beneficiary named in a certificate issued by a fraternal benefit. or life insurance, association to a deceased member thereof, upon which all dues and assessments, required by the by-laws of the association, have been paid, cannot be deprived of the benefit specified in the certificate by amendments to the by-laws, adopted subsequent to the issuance of the certificate, notwithstanding the application for membership, upon which the certificate was issued, contained a clause by which the applicant agreed to conform in all respects to the by-laws, rules and regulations of the association then in force or which might thereafter be adopted by its board of directors.

2. WHEN PROVISION OF CERTIFICATE OF INCORPORATION DOES NOT AFFECT CONTRACT.  The fact that the certificate of incorporation of the association contains a clause to the effect that the payment to the beneficiaries under the certificates of the association shall be "of such sum as the by-laws of such association may from time to time prescribe" does not distinguish the present case from the rule.

*Evans* v. *Southern Tier Masonic Relief Assn.*, 94 App. Div. 541, reversed.

(Argued June 13, 1905; decided October 3, 1905.)

CROSS-APPEALS from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered June 10, 1904, affirming a judgment in favor of plain-

tiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*E. J. Baldwin* for appellant. The contract between John J. Evans and the defendant being valid when entered into and Evans having fully complied with all the terms thereof, the defendant could make no change therein without the consent of Evans. (*Parish* v. *N. Y. P. Exch.*, 169 N. Y. 147; *Langan* v. *Supreme Council*, 174 N. Y. 269; *Kent* v. *Q. M. Co.*, 78 N. Y. 82; *O'Brien* v. *H. B. Society*, 103 N. Y. 310.)

*Frederick Collin* for respondent. The beneficiary of Evans can be paid or recover only in accordance with the contract between Evans and the defendant at the death of Evans. Her claim rests solely in contract, and in the contract which existed at Evans' death. (*Sanger* v. *Rothschild*, 123 N. Y. 577; *Hellenberg* v. *Dist. No. 1*, 94 N. Y. 580; *Sabin* v. *Phinney*, 134 N. Y. 423.) The provisions of the by-laws as amended January 11, 1892, and carried forward in the by-laws of November 29, 1892, and March 20, 1893, relating to monthly assessments and payments of benefits were valid and binding as to Evans and his beneficiary. (*Sabin* v. *Phinney*, 134 N. Y. 423; *People* v. *Grand Lodge*, 156 N. Y. 533; *Engelhardt* v. *Fifth Ward Loan Assn.*, 148 N. Y. 281; *Supreme Lodge* v. *Knight*, 117 Ind. 489; *Wilson* v. *U. M. F. Ins. Co.*, 58 Atl. Rep. 799; 1 Bacon Ben. Soc. & L. Ins. Co. [2d ed.] §§ 81, 185, 188; *Berdman* v. *St. Paul Mut. B. Assn.*, 29 Minn. 275; *Diligent Fire Company* v. *Comm.*, 75 Penn. St. 291; *Kent* v. *Mining Co.*, 78 N. Y. 159; *Stohr* v. *M. F. Society*, 82 Cal. 557; 6 Am. & Eng. Ency. of Law [2d ed.], 956; *Tisch* v. *P. H. Circle*, 74 N. E. Rep. 188; *Shipman* v. *P. H. Circle*, 174 N. Y. 398; *Gilmore* v. *Knights of Columbus*, 58 Atl. Rep. 223.)

Haight, J. This action was brought to recover the sum of $1,000, which it is alleged became due and owing to Eliza

J. Evans upon the death of her husband, John J. Evans, under a certificate of membership issued to him by the defendant. The certificate was issued under date of July 13th, 1885, in favor of Eliza J. Evans, wife, number 3,589, amount $1,000, and certifies that "John J. Evans of Bethel, Conn., is a member of the Southern Tier Masonic Relief Association of the State of New York, and is entitled to all its rights, privileges and benefits, and subject to the laws, rules and regulations governing said association." At the time Evans joined the association he signed an application for membership, in which he agreed to make punctual payment of all the dues and assessments for which he may become liable, and to conform in all respects to the by-laws, rules and regulations of the association then in force or *which may hereafter be adopted by its board of directors.* Under the by-laws then in force there were three classes of membership, and upon the death of a member of the class which Evans joined he became liable to an assessment for $1.00, and in case of his own death his widow became entitled to have a like assessment imposed upon the members of that class and to receive the same, but not to exceed the amount specified in the certificate. In January, 1886, the by-laws were amended so that all three classes were consolidated into one class and the assessment thereafter to be paid upon the death of a member was graded according to the age of the member paying the same, and under the table of rates then adopted Evans was still required to pay $1.00 upon the decease of each member of the association. Other amendments were adopted in January, 1892, November, 1892, and March, 1893, by which members of Evans' age were finally required to pay $2.40 per month, but distribution should be made only every other month of the dues received, and that out of such assessment there should first be paid, in full, the death claims of new members who had joined after the amendment of 1892, and the balance distributed *pro rata* among the representatives of deceased members, but not to exceed the amount designated in their certificate of membership. Evans fully performed all of the

obligations imposed upon him and paid all his assessments that had matured and become due and payable down to the date of his death, which occurred on the 16th day of November, 1895. On the 10th day of December thereafter a notice of assessment was served upon the members of the association liable to contribute to the death fund, of which Evans was the only person named whose death had been reported. On the 10th day of January following, another notice of assessment was ordered in which the names of eleven members are reported to have died. Upon these assessments the amount of $21,500 was due, but only the sum of $8,544.01 was received. Out of this was deducted the sum of $1,212.78, expenses of the association, and the sum of $500, the claim of Emil Krume, who became a member on the 11th day of November, 1895, and had died shortly thereafter, and the balance was distributed among the representatives of the remaining deceased members, and under that distribution the plaintiff became entitled to the sum of $340.98 only, for which sum she was awarded damages.

It is now contended that Mrs. Evans, as the widow of a deceased member and the person for whose benefit the certificate was issued, had acquired a vested right of which she could not be deprived by the subsequent amendments of the defendant's by-laws under the authority of *Beach* v. *Supreme Tent of the Knights of the Maccabees* (177 N. Y. 100). The opinion in that case received the approval of all of the members of this court except myself. I entertained the view that under the contract entered into in that case the right to amend the by-laws was reserved, and the certificate holder, or those for whose benefit he procured the same, did not acquire an absolute vested right under existing by-laws, but that they were subject to the reasonable amendments that should thereafter be found necessary and proper. But a contrary view was adopted by my associates, and it, therefore, becomes my duty to submit to the views of the majority. The question now raised is whether this case can or ought to be distinguished from that case.

The defendant was incorporated on the 9th day of October, 1869, under chapter 319 of the Laws of 1848.  The purpose of the incorporation, as stated in the certificate of incorporation, was " to provide for the payment to the widow, children or mother (or to such person or persons as may have been designated to receive the same) of any member of such association, as may from time to time decease, of such sum as the by-laws of such association may from time to time prescribe, the said sum to·be raised by the voluntary contribution to the same by the members of such association of such dues as such by-laws from time to time prescribe."  Under the by-laws persons desiring to become members must agree to comply in all respects with the by-laws, rules and regulations of the association and its board of directors.  Upon becoming a member a certificate is issued to him, in form the same as that to which we have already called attention.  The by-laws further provide that they may be amended at any annual meeting of the association, or at any special meeting thereof called for that purpose, a printed. notice of such proposed amendment to be sent to each member of the association, together with the notice of the time and place where the meeting will be held, and a two-thirds vote of the members present is required to pass the amendment.  The certificate of incorporation, while specifying the purposes for which the association is organized, evidently was not intended to form a part of the contract between the association and its members, but the application of Evans, the certificate issued to him, and the by-laws of the association became the contract between the parties.  ·This being so, the question arises as to whether the amendments of 1892 and 1893, under the right reserved in the by-laws to amend the same at any annual or special meeting of the association, operated to change the contract between the parties so as to conform it to such amendments. This question was answered in the negative in the case of *Beach* v. *Supreme Tent of the Knights of the Maccabees (supra).*

The Maccabees was incorporated as a fraternal, mutual benefit association.  It had a constitution providing for the

establishment of a benefit fund to pay the widow, children, dependent mother, father, sister or brother of a member as he shall direct in case of death, or upon the total disability of a member in good standing, such sum of money and in such manner as may be fixed by the endowment laws of the association. It also provided that the laws governing the endowment fund might be altered or amended by two-thirds vote of the members present at any regular meeting of the supreme tent or at a special meeting called for that purpose. A person desiring to become a member was required to sign an application in which he agreed that the statements contained therein and the constitution of the supreme tent shall form the basis of the contract for the endowment. The certificate issued to Beech provided that: "This certifies that Sir Knight Benjamin C. Beech is a member of the Center Tent, No. 28, located at Yorkshire Center, and that he is a beneficiary in good standing and in accordance with and under the provisions of the laws governing the order he is entitled to receive one assessment on the membership, but not exceeding the amount of $2,000, as a benefit to Sarah J. Beech, his wife, upon satisfactory proof of his death,  *  *  *  and in case of permanent or total disability or upon attaining the age of seventy years he would be entitled to receive one-half of such endowment as provided in the laws of the order." Subsequently to his becoming a member the laws of the order were amended so as to provide that in case of his disability he should receive annually one-tenth of the endowment fund provided for him instead of one-half in gross sum. In that case it was held that he had a vested right to recover one-half of the endowment fund upon his becoming totally disabled, and that the power reserved in the constitution of the society to amend its laws did not authorize it to so amend as to provide for the payment of the endowment fund in ten equal annual installments.

We are now asked to distinguish this case from the *Maccabees* case, and our attention is called to the purpose of the incorporation as stated in its certificate, to the effect that the

payment to the persons designated by the deceased was to be "of such sum as the by-laws of such association may from time to time prescribe." But, as we have seen, the certificate of incorporation forms no part of the contract, and if it did this clause would doubtless have to be construed in connection with the by-laws upon the subject in force at the time the certificate was issued. That this clause was not understood as forming a part of the contract, is apparent from the action of the association in amending the by-laws in 1893 so as to provide that upon the death of a member the sum to be paid to his representatives "shall be the maximum amount as designated in his certificate of membership, provided, however, that no rates, terms or conditions shall be changed upon the policies as in force on the 30th day of September, 1892, but shall remain subject to the following by-laws of this association as existing at that time, and shall be regarded as a contract upon sufficient consideration between the members therein mentioned and the association," thereby expressly doing away with the right to change the rights of the members from time to time by its by-laws as specified in the article of incorporation. The object and purpose of this amendment was, to pay in full all policies or certificates issued after the 30th day of September, 1892, leaving the old members to be satisfied out of that which may remain of the assessments collected. It is true that there is a variation in the certificates. In the *Maccabees* case the certificate provided for payments to be made in case of total disability. In this case the certificate contains no provision of that character, but I am unable to see that this distinguishes the two cases in principle. In the *Maccabees* case the beneficiary would ultimately receive the full amount of his certificate. In this case the beneficiary gets only about one-third of the amount of the certificate.

We think that the former case is controlling upon us and that the judgment should be reversed and a new trial ordered, with costs to abide the event.

Cullen, Ch. J., Gray, O'Brien, Bartlett, Vann and Werner, JJ., concur.

Judgment reversed, etc.