DENNIS L. WRIGHT, Plaintiff, *v.* THE KNIGHTS OF THE MACCABEES OF THE WORLD, Defendant.

(Supreme Court, Jefferson Special Term, November, 1905.)

Fraternal and mutual benefit associations — Insurance contract — By-laws of association as part of contract — Amendments thereto — Reinstatement of member.

Where a member of a mutual fraternal benefit association, in his application for membership, agreed that any laws of the association then in force, or that might thereafter be adopted, should form the basis of the contract for beneficial membership; and the certificate or policy issued to the member in pursuance thereof

stated that at his death one assessment on the membership not exceeding in amount the sum of $1,000 would be paid as a benefit to the designated beneficiary; and where it appeared that the laws then in force fixed the assessment of the member at one dollar and forty cents per month and provided that he should pay the same rate of assessment thereafter as long as he remained continually in good standing in the order; and where the laws were thereafter amended by increasing the monthly assessments to be paid by the member from one dollar and forty cents to two dollars and seventy-five cents at fifty years of age, and three dollars after the age of fifty-five; although it appeared that the original rate of one dollar and forty cents per month was inadequate and the company, if continuing to do business at that rate, must eventually become embarrassed and probably cease to exist and the increased rate was not excessive; held, that the association could not increase the assessments required to be made by the member and that he was entitled to be restored to membership after having been suspended for failure to pay assessments at the increased rate.

ACTION to compel defendant to restore plaintiff to membership, after having suspended him for non-payment of dues.

John Conboy, for plaintiff.

Brayton A. Field, for defendant.

ROGERS, J. The defendant is a mutual, fraternal, benefit association, organized under and by virtue of the statutes of the State of Michigan, having its principal or home office in the city of Port Huron, in said State, with branches or subordinate bodies known as " Tents " in other places in said State, and in other States, one of which is located in the city of Watertown, N. Y., and is known as Tent No. 418.

The defendant seems to have been authorized by the insurance department of the State of New York to do business here, pursuant to Laws of 1892, chapter 690, sections 232, *et seq.* (The Insurance Law).

The plaintiff is a resident of this State, and on the 9th day of June, 1897, signed an application to become a member of said association, including membership in said Watertown Tent. The application, among other things, contains the

Supreme Court, November, 1905. [Vol. 48.

following: " I hereby agree that * * * and (that) the
laws of the Supreme Tent of the Knights of the Maccabees
of the World, now in force or *that may hereafter be adopted,*
shall form the basis of this contract for beneficial member-
ship * * *; that any * * * neglect to pay any
assessment which shall be made by the Supreme Tent, within
the time provided by the laws thereof, or neglect to pay the
dues fixed by said laws in the manner and at the time pro-
vided by said laws, or the by-laws of the Tent, to which I may
belong, shall vitiate my benefit certificate and forfeit all pay-
ments made thereon * * *. This application and the
laws of the Supreme Tent now in force, or that may hereafter
be adopted, are made a part of the contract between myself
and the Supreme Tent; and I for myself and my beneficiary
or beneficiaries agree to conform to and be governed thereby."

On the nineteenth of said month, the defendant issued to
the plaintiff a certificate or policy stating, in part, the
following: " This certifies that Sir Knight, Dennie L.
Wright, has been regularly admitted as a member of Water-
town Tent, No. 418, located at Watertown, State of N. Y.;
and that in accordance with and under the provisions of
the laws of the order he is entitled to all the rights, benefits,
and privileges of membership therein, and that at his death
one assessment on the membership, not exceeding in amount
the sum of One Thousand Dollars, will be paid as a benefit
to Mary Wright * * * provided he shall have in every
particular complied with the laws of the order now in force
or *that may hereafter be adopted.*"

The plaintiff, at the date of said certificate, was fifty years
of age.

The laws of the order, then in force, were adopted May
18, 1895, Section 172 of said laws provided a schedule of as-
sessments, graduated according to age, fixing the assessment to
a member for a one thousand dollar benefit, who was between
forty-eight and fifty-one years of age, at one dollar and forty
cents per month, the first assessment to become due and pay-
able at the date of admission; and that he should " pay the
*same* rate of assessment thereafter, so long as he remains con-
tinually in good standing in the order." There was a further

provision " that in case one assessment per month shall not be sufficient to pay the death and disability claims, as they occur, then the Supreme Record Keeper is hereby authorized to levy such *additional* assessments, as may be required, from time to time, to pay such claims."

Section 183 of the same " laws " provides: " In case one assessment per month shall not be sufficient to pay the death and disability claims, as they accrue, then the Supreme Record Keeper is hereby authorized to levy such additional assessments as may be required for that purpose."

The monthly assessments are due on the first day of each month, and must be paid within the month. Failure to make such payment operates to suspend the member from all the rights and benefits of the order.  § 182.

In addition to the assessment to the Supreme Tent, an initiation fee of five dollars, a fee for the certificate of membership of one dollar, and such dues as might be fixed by the by-laws of each Tent were made payable by the member to the subordinate Tent. § 190. The dues of the Watertown Tent as prescribed by its by-laws, at the time the plaintiff became a member, were three dollars per year. On the first of January, 1898, the dues of that Tent were raised to four dollars per year.

The plaintiff paid and the defendant accepted assessments, and the subordinate Tent dues, at the rates mentioned, to and including December, 1904.

In July 1904, the defendant amended its " laws " to take effect on the twenty-sixth of said month, making the monthly assessment for a certificate of $1,000, $2.75 at the age of fifty (§ 329) ; and further, " the monthly rate to be paid by each life benefit member hereafter admitted, who pays a monthly rate under the term plan provided in the preceding section, when he attains fifty-five years of age, shall be $3 for each $1,000 of life benefits carried, beginning on the first days of January and July immediately following the attainment of such age " (§ 332) ; also that " on and after January 1, 1905, all present life benefit members of the association, who are then fifty-five years of age, or over  *  *  *  shall

36

pay $3 per month for each $1,000 of life benefits carried."
§ 335.

For a failure to pay the assessment within the month a
member shall stand suspended (§ 347) and by such suspen-
sion forfeit absolutely his right to participate in the benefit
funds of the association, or the fraternal privileges of his
Tent.   § 346.

It will be noted that at the time the amended "laws" of
1904 were enacted, the plaintiff had passed the age of fifty-
five years.

The plaintiff, declining to pay the increased rate, provided
by the amended laws of 1904, was suspended; and he now
brings this action for a restoration.

Basing an estimate on the defendant's experience, the rates
assessed at the time the plaintiff became a member are not
sufficient for its perpetual maintenance and, if continued
without an increase in the amount of the assessment, it will
be compelled to go out of business within eighteen to twenty-
five years.

The contract consists of the application, certificate, and
"laws"— the latter contained in a printed book of 109 pages,
exclusive of an index, and is divided into 258 sections.   By
reference to them, it will be seen that the terms of the con-
tract are involved, ambiguous, and can only be spelled out
by a careful study, if at all, combining the several parts, and
connecting each with the other, so as to make, if possible, a
completed whole.   The ambiguity is fairly illustrated by
the provision of section 172, that a member "shall pay the
*same* rate of *assessment so long* as he remains" in the order,
followed by a statement that *additional* assessments may be
made, from time to time, as required.

Why the insurance department of this State should permit
a foreign corporation to do a life insurance business here,
making such a contract as appears in this case, with its con-
fiding citizens, is difficult to understand.

Read literally, there is no limitation upon the number of
assessments that may be imposed, nor to the changes in the
laws that may be made, even though they shall operate to

confiscate all the money which the member has paid in, and compel him wholly to abandon his contract.

It is equally surprising that an intelligent man should pay his money for the purpose of making provision, for the benefit of those who shall come after him, without insisting upon a reasonably clear statement of the obligations he takes upon himself, and a like certainty as to the sum to accrue in consideration of the money paid in.

There are certain well-established rules for the interpretation of contracts, which must be observed:

(*a.*) An unreasonable and oppressive construction is to be avoided.  Smith v. Molleson, 148 N. Y. 241, 248.

(*b.*) Effect must be given to the intent of the parties to the contract, if it can be ascertained therefrom.  Clark v. New York Life Ins. & Trust Co., 64 N. Y. 33, 38; Perkins v. N. Y. C. R. R. Co., 24 id. 196, 203.

(*c.*) The whole instrument and all its clauses must be considered.  Miller v. Hannibal & St. Jo. R. R. Co., 90 N. Y. 430.

(*d.*) The contract having been prepared by the defendant, all ambiguities in it must be resolved in favor of the plaintiff. Vought v. Eastern B. & L. Assn., 172 N. Y. 515; Gillet v. Bank of America, 160 id. 554; Janneck v. Metropolitan Life Ins. Co., 162 id. 574; Marshall v. Commercial Travelers' Mut. Acc. Assn., 170 id. 434.

(*e.*) It must be construed not alone as understood by the defendant, but as the plaintiff had a right to, and the defendant had reason to believe he would understand it.  Dilleber v. Home Life Ins. Co., 69 N. Y. 256, 263.

It is contended by the defendant that inasmuch as authority to alter and amend its " laws " was reserved in the contract, and also because the plaintiff agreed he would abide by the changes so made, it had the right to raise the rate of assessment, as was in fact done.

It is likened to a reservation by the Legislature in a statute, of power to alter and amend, where the original act grants a privilege or franchise, amounting to a contract (Hyatt v. Whipple, 37 Barb. 595; Hinckley v. Schwarzschild & Sulzberger Co., 107 App. Div. 470; U. S. Trust Co. v. U. S.

Supreme Court, November, 1905. [Vol. 48.

Fire Ins. Co., 18 N. Y. 199), which, when made, may not be assailed for the reason that it would impair the obligation of the contract. Dartmouth College v. Woodward, 4 Wheat. 518.

In the case at bar, there was not only a reservation of the right to alter and amend the " laws," but an express agreement that the *number* of assessments might be increased without other limitation than the necessities of the association. This was plainly written in the contract. Besides, the plaintiff must have known that the falling off of membership, increase of the death rate, or both—conditions not only possible, but probable — might be such as to make his assessments aggregate an annual sum far in excess of sixteen dollars and eighty cents (twelve times one dollar and forty cents equal sixteen dollars and eighty cents). The number might easily be multiplied so as to make the premiums aggregate thirty-six dollars, which would, obviously, be within the letter and spirit of the contract.

It is apparent that the defendant undertook the business of insurance at a price below its actual cost, to the extent that if continued the corporation must eventually become embarrassed and probably cease to exist; so that if the then rates were continued, and limited to twelve per year, the plaintiff might outlive the association, and thus deprive the payee named in his certificate of any actual benefit. The advance in the amount of the assessment to three dollars per month, compared with the premiums which, I understand, are charged by " Old Line " Companies, to insure persons of the age of the plaintiff, does not seem to me to be excessive.

While it does not appear that the plaintiff had special knowledge of the cost of insurance, it seems to me that the general information which every man of intelligence possesses regarding such matters, must have been such as, at least, to cause him to suspect that a long life would be entirely incompatible with reasonably certain insurance at the rate paid. Can he justly complain if it be increased in an amount which will keep the company alive — doing business as a going concern — and provide for payment of the contracted benefits when the time shall have arrived ? In other words,

can he, as a member of the association, and in the light of the contract he has made, be heard to object to the defendant's doing that which seems absolutely essential to enable it to carry out the agreement, not only with himself, but also with his co-members, to whom he bears, at least, a fraternal obligation?

Would it not be wiser for him to pay a three-dollar assessment, with a reasonable probability that his beneficiaries will get the amount mentioned in the certificate in return, than to pay one dollar and forty cents, with an almost equal certainty that nothing will be repaid, unless he be overtaken by early death?

A course of business that conserves the good of the individual and of the membership at large, it would seem, ought to be preferred, to one that must ultimately result in wreck and ruin.

That a reasonable change of the laws of an association may be made, when the right has been reserved in the contract, has been held by judges of great eminence and courts of high authority:

In Engelhardt v. Fifth Ward Assn., 148 N. Y. 281, Judge Andrews (p. 287) says: " The member of an association accepts membership with notice of the powers (to alter and amend) thus conferred. He is subject not only to regulations existing when he becomes a member, but to such as may be enacted from time to time by the association within the scope of the power given by the statute. It may be admitted that the association could not under this power destroy the contract between it and the member. But the contract made was in law subject to the power of the association to enact at any time reasonable by-laws. It would not be reasonable to extend this power so as to authorize the association by subsequent by-law to change the essential character of an antecedent agreement between a member and the association, as for example, that a withdrawing member should not be repaid his dues. But a by-law more or less affecting the remedy of the shareholder may be passed, and existing members will be bound, so far at least as they consented to the exercise of such a power when they became mem-

bers. The recent English cases (citing authorities) are quite full upon this point. We think the by-law enacted in the present case, that withdrawing members should be paid in the order of the presentation of their application, was a reasonable regulation and bound the plaintiff, although enacted after he became a member."

In Beach v. Supreme Tent Knights of Maccabees, 177 N. Y. 100, Judge Cullen (p. 105) says: "We think that the obligations assumed by the defendant in its certificate of membership should not be impaired by provisions of the constitution and laws of the order to which the attention of the member might never be called, or, at least, they should not be cut down under the reservation of the power to amend. It is quite easy for fraternal organizations, such as the defendant, if they deem the provisions for benefits to their members tentative only and desire to have them subject to such modification as the business of the orders may require, to express that in the certificate. So, in the present case, if the certificate had provided that the payments therein specified should be subject to such modification as to amount, terms and conditions of payment and contingencies in which the same were payable as the endowment laws of the order from time to time might provide, the amendments would be applicable to existing members."

" There being a power of amendment reserved, the contract between the plaintiff and the society was liable to changes with regard to future benefits to which a disabled member might be entitled, as well as in other matters and the plaintiff had agreed that these changes duly made in compliance with the rules of the society should be binding upon him, not as a new contract, but as a part of the old contract and under its provisions." Per Hammond, J. Pain v. Societe St. Jean Baptiste, 172 Mass. 319, 322.

" Where * * * the original contract * * * provides for alteration of the rules, he is bound by any subsequent alteration that may be made within the power of alteration, whatever the extent of that alteration may be." Smith v. Galloway, 1 Q. B. 71, 77.

In Wright v. Minnesota Mutual Life Ins. Co., 193

U. S. 657, where the corporation, having authority of its charter to amend all by-laws thereof, changed from an assessment plan to a flat premium, it was held that certain dissenting members had no just ground for complaint, the court saying: " It would be unreasonable and oppressive to require a member or stockholder to remain in a corporation whose fundamental purposes have been changed against his will. On the other hand, where the right of amendment is reserved in the statute or articles of association, it is because the right to make changes which the business may require is recognized, and the exercise of the privilege may be vested in the controlling body of the corporation. In such cases, where there is an exercise of the power in good faith, which does not change the essential character of the business, but authorizes its extension upon a modified plan, both reason and authority support the corporation in the exercise of the right. * * * Nor does it appear that the changes were arbitrarily made without good and substantial reason. · The testimony in this record discloses that the experience of this assessment insurance company was not anomalous or unusual. It was a case of history repeating itself. Insurance payable from assessments upon members may begin with fine prospects, but the lapse of time, resulting in the maturing of certificates, and the abandonment of the plan for other insurance by the better class of risks, has not infrequently resulted in so increasing assessments and diminishing indemnity as to result in failure." Per Day, J. (pp. 663, 664).

Notwithstanding the power reserved to amend the laws, and the plaintiff's agreement to be governed by them, the amendments to be valid must be reasonable, and must not do violence to vested rights. Parish v. New York Produce Exchange, 169 N. Y. 34; Weber v. Supreme Tent, Knights of Maccabees, 172 N. Y. 490; Langan v. Supreme Council, 174 id. 266; Beach v. Supreme Tent, Knights of Macabees, 177 id. 100; Evans v. Southern Tier Masonic Relief Assn., 182 id. 453; Fargo v. Supreme Tent, Knights of Maccabees, 96 App. Div. 491; Smith v. Supreme Council, 94 id. 357.

A careful reading, however, will show that none of the cases cited goes quite to the length of holding that a member of a fraternal, beneficial association, such as this,— contract-

ing as this plaintiff did.— has a vested right in having the charges remain at a certain rate, when it is necessary that the amount of the assessments be increased in order that the association may be kept alive; the question of amendment, when it is necessary to continue solvency, does not seem to have been passed upon.

In Parish v. New York Produce Exchange, 169 N. Y. 34, it was held that where a gratuity fund was accumulated by assessments upon its members for a series of years, for the benefit of beneficiaries designated in the charter, the corporation could not, by a subsequent amendment of the by-laws, provide that the fund be converted into cash, and, after paying expenses, distributed among the living subscribing members, as it was unreasonable and an attempt to divert the fund to a different use than originally intended.

In Weber v. Supreme Tent, Knights of Maccabees, 172 N. Y. 490, a member was insured against unintentional self destruction *after one* year; and it was held that a subsequent amendment of the by-laws, providing that self destruction, while *insane,* within five years from the date of the policy, should render it void, was unreasonable, since it deprived the beneficiary of his rights under the contract as made.

In Beach v. Supreme Tent, Knights of Maccabees, *supra,* the certificate of membership contained a stipulation that in case of permanent or total disability, or upon attaining the age of seventy years, the member would be entitled to receive one-half of the endowment fund, as provided in the by-laws of the order. This was held an absolute contract to pay one-half of the amount named in the certificate on disability, as provided in the by-laws of the order, and could not, without the consent of the member, be impaired by a subsequent by-law, to the effect that a member, on becoming totally and permanently disabled, from any cause, should be entitled to receive from the disability fund only one-fourth part of the sum for which his benefit certificate was issued, notwithstanding the constitution of the society reserved the right to amend the by-laws governing the endowment fund.

In Evans v. Southern Tier Masonic Relief Assn., 182 N. Y. 453, it was held that a member who has paid all dues and assessments could not be deprived of the benefit, specified in his certificate, by an amendment to the by-laws, adopted subsequently to the issuance of the certificate, even though the application, upon which it was issued, contained a clause by which the applicant agreed to conform to the by-laws, rules and regulations of the association, then in force or which might thereafter be adopted by its board of directors.

In Fargo v. Supreme Tent, Knights of Maccabees, 96 App. Div. 491, the certificate provided for the payment to the beneficiary of $2,000. At the time it was issued the by-laws provided that no benefit should be paid if the member died from suicide within *one* year after admission, sane or insane. More than one year after, the by-laws were amended to the effect that no benefit should be paid when death was from suicide within *five* years after admission, *sane* or *insane,* except that all assessments paid in should be repaid to the beneficiary. Six years later there was a further like amendment, except that at death twice the amount of assessments paid in should be repaid, not exceeding the face of the certificate; and it was held the beneficiary was entitled to be paid the full sum of $2,000.

Mr. Justice Williams, writing the opinion in this case, says: " The law of this State is well settled that the defendant had no power to make such an amendment, so as to bind persons already insured and their beneficiaries " (p. 494).

In Smith v. Supreme Council, 94 App. Div. 357, the amendment reduced the amount payable to the beneficiary from $5,000 to $2,000. This was held invalid.

If the amount of the certificate cannot be reduced by subsequent amendment, it seems to me to follow, as a necessary corollary, that the assessment required to be paid in to furnish the fund from which the certificate shall finally be paid, cannot itself be increased; that if there can be no scaling down at one end of the transaction, there may not be an addition at the other end.

Having in mind the peculiar contract in question, the

rules of interpretation already mentioned, and putting upon the defendant such burdens as they impose, considering also the serious results that may follow the judgment to be directed, I am, with some misgivings, constrained to conclude that — according to the weight of authority in this State — the amendments in question were not reasonable, and were in violation of vested rights.

It follows that the plaintiff was entitled to continue his membership at the rate provided when he joined; and that the defendant was not justified in expelling him for his refusal to comply with the amended laws.

Judgment ordered for plaintiff, without costs.