MARY I. QUIGLEY, Respondent, *v.* THE LOCOMOTIVE ENGINEERS MUTUAL LIFE AND ACCIDENT INSURANCE ASSOCIATION, Appellant.

Fourth Department, May 8, 1935.

*Burns & Burns* [*Clarence E. Weisell* and *Robert H. Wendt* of counsel], for the appellant.

*James P. Donovan*, for the respondent.

CROSBY, J.  Plaintiff sues as beneficiary under two life insurance certificates issued to her father, Patrick Quigley, by the defendant, a mutual protective and fraternal benefit society.  The certificates are for $1,500 each.  Each party moved for summary judgment

pursuant to rule 113 of the Rules of Civil Practice. The Special Term granted plaintiff's motion, and defendant appeals.

The certificates were originally issued to plaintiff's father in 1883. As is usual in this kind of insurance, the constitution and by-laws of the defendant were made a part of the contracts. There came a time when defendant's by-laws were amended to provide that certificate holders who had paid their assessments for forty years were to have their certificates paid up for life. Plaintiff's father, having paid assessments on his certificates for over forty years received paid-up certificates in place of those originally issued to him. It is upon these later certificates that this suit is brought.

In 1933 defendant, claiming to find its business on an unsound actuarial basis, again amended its by-laws so as to provide that holders of paid-up certificates must again pay assessments in order to keep their certificates alive as obligations of the defendant. October 1, 1933, was set as the last day for so-called paid-up certificate holders to start paying assessments.

To certificate holders sixty years of age or more there was given, however, by the by-laws, an option of surrendering their old certificates and taking new paid-up certificates for a fraction of the amount of their old ones. In the case of Quigley, he being more than eighty years of age, he was entitled to receive new paid-up certificates for one-half the amount of his old certificates, to be paid out of the then existing assets of the company which were set aside for that purpose. That is the substance of section 11 (c) of the by-laws adopted in 1933. That section also gave members, taking new paid-up certificates, for a portion of the amount of their old ones, an option to take additional insurance, of the kind on which assessments had to be paid, at rates, according to age, as set forth in a schedule attached to section 11 (c).

As a result of all this, Quigley had two options — he could go back to the situation he was in before his certificates were marked " paid-up," and start again paying assessments, or he could take new paid-up certificates for fifty per cent of the amount of his old ones, with the privilege of taking additional insurance.

The question in the case is: What did he do? The facts in the case are quite undisputed. A field agent, named DuBois, was sent out by defendant to interview old certificate holders. He did not get around to see Quigley until November 22, 1933, somewhat after the last date on which Quigley must have paid assessments in order to keep his certificates alive, but, from what happened, we may assume that defendant waived the default up to that time.

At the interview between DuBois and Quigley the latter signed the application that is Exhibit C. This printed form was clearly designed for use of certificate holders wishing to exercise the option to resume paying premiums on their old paid-up certificates. It is equally clear that Quigley did not choose to exercise that option, for every reference to " Class A " insurance (which is the kind on which premiums would have to be paid) is stricken out with a pen. Furthermore, under the word " Plan " are written the words " Paid up." Further still, the " Interim Certificate and Binding Receipt," which DuBois delivered to Quigley for the surrender of the latter's old certificates, is for " $1,500 " of insurance, which is fifty per cent of the amount of Quigley's old certificates, and, in the place where Quigley's assessment rate was to be written in, the words, " Paid up " appear, and, on the margin, are written the words, " Paid up Portion."

Indeed, if anything were needed to make it perfectly clear that Quigley intended to exercise the option to take paid-up insurance for one-half his $3,000 of old paid-up insurance, on a non-assessment basis, it is found in plaintiff's own affidavit telling what happened at the interview between her father and DuBois. She was present at the interview and says that " after much persuasion " her father surrendered his old paid-up certificates, " the consideration for said transfer being the issuance of another certificate in the amount of $1500.00 ' paid up.' "

It so happened that Quigley died soon thereafter, and before defendant got around to issue any new certificate to Quigley, and the theory advanced by plaintiff, and adopted by the Special Term, is that Quigley's application (Exhibit C) constituted an offer for some kind of insurance other than the " Class A" insurance represented by his old certificates, and that, because of defendant's failure to accept the offer before Quigley's death, the parties are thrown back upon the original paid-up certificates for $3,000.

This theory is untenable. The undisputed facts do not support it. Even though, in the " Interim Certificate and Binding Receipt," there are left certain references to " Class A" insurance, not deleted, the instrument, taken as a whole, and read in connection with Exhibit C, the application, and read in connection with plaintiff's own affidavit as to what was the understanding, shows that Quigley did not make an offer, but exercised an option. There is no such ambiguity in the application and interim certificate as to make a question of fact.

The plaintiff argues that, in accordance with section 11 (c) of the by-laws of defendant, the " privilege of exchange " of Quigley's

old paid-up certificates for new paid-up ones for half the amount, did not expire until April 1, 1934, before which date Quigley died. Defendant does not deny that Quigley had until April 1, 1934, to exchange his old certificates for new paid-up ones for $1,500, and indeed has issued such a new one and tendered it to plaintiff, and acknowledges its obligation under it according to its terms. It does not follow, however, that Quigley had until April 1, 1934, in which to exercise his option to accept " Class A" insurance without paying the required assessments. Indeed the " note " subjoined to section 11 (c) states that the " privilege of exchange " is subject to the provision of by-law No. 14, which provides that a certificate on which assessments must be paid lapses on non-payment, subject to reinstatement on certain conditions.

The situation confronting Quigley when he had his interview with DuBois was not one calling for negotiations at all. Due to defendant's change in the by-laws Quigley had a choice of two options. From the exhibits and plaintiff's own affidavit he clearly did not exercise the option to go back onto an assessment paying basis, and, even if he could be deemed to have done so, he did not pay his assessments so as to keep his insurance alive. Quigley clearly exercised the option to take paid-up insurance for half the amount of his former insurance, and defendant does not repudiate its obligation arising by reason of the exercise of that option.

Plaintiff argues another point, namely, that the by-laws which defendant enacted in 1933 are so arbitrary, unreasonable and discriminatory as to deprive the insured and herself of vested rights, relying on such authorities as *Evans* v. *Southern Tier Masonic Relief Assn.* (182 N. Y. 453); *Beach* v. *Supreme Tent of Knights of Maccabees* (177 id. 100); *Wright* v. *Knights of Maccabees* (196 id. 391); *Langan* v. *Supreme Council American Legion of Honor* (174 id. 266); *Steuernagel* v. *Supreme Council of Royal Arcanum* (234 id. 251) and *Everett* v. *Supreme Council, C. B. L.* (236 id. 62).

It is doubtful if that attack may be made by plaintiff in the present state of her complaint, but, in any case, Quigley accepted the by-laws as amended and acted under them by exercising one of the options open to him.

Furthermore, defendant deprived Quigley of none of his rights under his original certificates. They called for payment of assessments during life. At one time defendant granted him the gratuitous favor of releasing him from the payment of assessments. By the amended by-laws of 1933 defendant did no more than to withdraw that favor, the benefit of which he had enjoyed for some years. The equities of the case do not favor the judgment granted.

517

The judgment and order should be reversed on the law, with costs, and plaintiff's motion denied, with ten dollars costs, and defendant's motion granted, with ten dollars costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Judgment and order reversed on the law, with costs, and plaintiff's motion denied, with ten dollars costs, and defendant's motion granted, with ten dollars costs.